COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Benton, Coleman, Willis,
      Elder, Bray, Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


ALBERT N. STUBBLEBINE, III
                                        OPINION BY
v.        Record No. 1915-94-4     JUDGE SAM W. COLEMAN III
                                        JULY 23, 1996
GERALDINE M. STUBBLEBINE


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
J. Howe Brown, Jr., Judge

Lawrence D. Diehl for appellant.

James A. Watson II (Surovell, Jackson, Colten
& Dugan, P.C., on brief), for appellee.


     In this domestic relations appeal, we decide whether the
trial court erred in awarding spousal support by imputing income
to the appellant, Albert Stubblebine, a sixty-four year old
retiree, based upon his ability to earn income in addition to his
retirement benefits.  We hold that considering Mr. Stubblebine's
capability for obtaining gainful employment as evidenced by his
recent employment, the trial court did not err by imputing income
to him.  Accordingly, in view of his former wife's financial
needs the trial court did not abuse its discretion in basing its
support award upon the imputed income or in ordering that Albert
Stubblebine pay his former spouse's health insurance premiums.

     The parties were married in 1952 after Albert Stubblebine
graduated from the United States Military Academy at West Point.
 They separated July 4, 1991, when Mr. Stubblebine left the

marital home. The final divorce decree entered September 19, 1994, granted Geraldine Stubblebine a final divorce on the ground of adultery.

Albert Stubblebine, a career army officer, attained the rank of major general. During his army career, he earned a master's degree in chemical engineering. Throughout the marriage, Geraldine Stubblebine was an exemplary wife for Albert Stubblebine and an exemplary mother for their two adopted children. In addition to her duties as a wife and mother, she periodically worked outside the home in a series of part-time jobs in order to contribute to the family's income.

After Mr. Stubblebine retired from the Army in 1984, he worked for BDM Corporation (BDM), a private company, where his annual salary as a vice president was $90,000. He retired from that position in 1990 and undertook a variety of independent consulting jobs, the last of which ended in 1993, after the parties had separated and five months before filing of the divorce proceedings. The last consulting job involved a contract that paid Stubblebine $40,000 annually.

Albert Stubblebine was not gainfully employed at the time of trial. He was, however, working fifty to sixty hours per week, without compensation, preparing for an annual conference for an organization involved in the study of parapsychology and psychic phenomena, subjects of personal interest to Stubblebine. He was also working twenty hours per week for his female friend, without

pay, helping organize and manage her psychiatry practice.  At the time of trial, Albert Stubblebine was receiving $5,432 per month in gross retirement pay from the Army and $772 per month in gross retirement pay from BDM.

At the time of trial, Geraldine Stubblebine suffered from several chronic diseases, including arterial fibrillation, small bowel disease, and chronic shortness of breath caused by removal of part of a lung due to cancer.  She is unable to work.

The parties stipulated that Mrs. Stubblebine would receive one-half of Mr. Stubblebine's two retirement pensions, which would give her a monthly income of $3,058.[1]  Mrs. Stubblebine requested, however, that the trial court award her spousal support under Code § 20-107.1 in addition to one-half of the retirement payments.  In response, Mr. Stubblebine contended that he was twice retired, both times during the marriage when the parties did not contemplate divorce; that he was not gainfully employed and had no significant income; and that he had voluntarily relinquished to his wife one-half of his monthly retirement income, the maximum to which she is entitled from the pension under Code § 20-107.3(G).  He contended that he had no earned income from which to pay support.  Mrs. Stubblebine's evidence showed monthly expenses in the range of $5,200.

The trial court, in awarding her $1,000 per month spousal

[1]Presumably, the division of the two pensions was an equitable distribution of this item of marital property under Code § 20-107.3, as limited by subsection G.

support, found that the

> husband contrary to his assertion, is not retired. . . . Clearly, husband chooses to work but not earn income which could help support his wife, who cannot work. Husband's needs, as shown by the evidence, are minimal. He can and should pay spousal support. The evidence supports a minimum imputed income to the husband of $40,000. Wife is entitled to a spousal support award of $1,000 per month. Husband should provide health insurance for the wife substantially similar to what is now provided.

A spouse's entitlement to support and the amount of the award are matters within the sound discretion of the trial court. Steinberg v. Steinberg, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990). In determining the amount of an award, the court must consider all of the factors set forth in Code § 20-107.1. The court's decision is presumed correct and will not be disturbed unless some injustice has been done. Steinberg, 11 Va. App. at 329, 398 S.E.2d at 510.

A reduction in income resulting from a voluntary employment decision does not require a corresponding reduction in the payor spouse's support obligations, even if the decision was reasonable and made in good faith. See Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991). Accordingly, a "court may impute income to a party who is voluntarily unemployed or underemployed." Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). The trial court, in determining whether to award support and the amount thereof, may consider earning capacity as well as actual earnings in fashioning the award so

long as it applies "the circumstances in existence at the time of the award." Payne v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987); see also Code § 20-107.1.

Albert Stubblebine was not gainfully employed at the time of trial. He had twice voluntarily retired after two careers. He did, however, work fifty to sixty hours per week for a private organization investigating psychic phenomena and twenty hours per week organizing and managing his friend's psychiatric practice. For these efforts, he did not receive any monetary compensation. In fact, Stubblebine testified that he was no longer interested in making money and that he had not sought paid work since 1993.

Contrary to the assertions in the dissent, we do not hold that Albert Stubblebine's support obligation arises only because of the nature of his post-retirement activities. The nature of Mr. Stubblebine's activities following retirement are relevant only insofar as they evince his continued physical and mental capacity to be gainfully employed. Albert Stubblebine's support obligation arises from the current needs of his former spouse and his ability to provide that support.

Although Albert Stubblebine had completed a full military career and retired from BDM, the court found that he had the capability to earn $40,000 per year as a consultant. The court based this finding on the contract that Albert Stubblebine had worked under five months before the hearing and did not consider his earning capacity prior to his retirement from BDM. See

Donnell v. Donnell, 20 Va. App. 37, 41, 455 S.E.2d 256, 258 (1995) (holding that the trial court improperly imputed income to the payor spouse on the basis of his pre-retirement earning capacity).  Imputing income[2] to Albert Stubblebine on the basis of his recent past earnings did not constitute an abuse of discretion.  "[A] trial court may impute income based on evidence of recent past earnings."  Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993).  See also Barnhill v. Brooks, 15 Va. App. 696, 703, 427 S.E.2d 209, 213 (1993) (holding that an exhibit "indicating precisely" "prior gross monthly income" presented a "unique situation" that enabled the trial judge to impute income to the payor spouse).  Although Albert Stubblebine introduced evidence that, due to the depressed defense industry, he no longer could obtain a similar consulting job, his ability to work and his record of gainful employment subsequent to his retirement support the trial court's finding that Stubblebine could be gainfully employed.  Consequently, based upon the recent record of earnings, the court did not premise the award "upon the occurrence of an uncertain future circumstance."  Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979).

Albert Stubblebine argues persuasively that a spousal

---

[2]Presumably, the judge imputed income to Albert Stubblebine because he believed he could not order support under Code § 20-107.1 from pension income previously equally divided in equitable distribution.  See Code § 20-107.3(G)(1).  We express no opinion on the relationship between Code §§ 20-107.1 and 20-107.3(G)(1) and decide only whether a trial court may impute income to a retired spouse when fixing spousal support.

support award should not operate to force persons who have reached usual retirement age to continue working.  We do not by this opinion establish a bright-line rule requiring a payor spouse to forgo retirement in order to maintain support obligations at a pre-retirement level.  Each case depends on its particular facts.  See Pimm v. Pimm, 601 So.2d 534, 537 (Fla. 1992); Avery v. Avery, 548 So.2d 865, 866 (Fla. Dist. Ct. App. 1989).

In Pimm, the appellant retired at the age of sixty-five and petitioned the trial court to terminate his alimony obligations.  Pimm, 601 So.2d at 535.  He argued, much like Albert Stubblebine does here, that a payor spouse would be placed in the "untenable position of being unable to retire at any age" if courts did not consider the reduced income resulting from a reasonable voluntary retirement when deciding whether to modify alimony obligations.  Id. at 536.  The Florida Supreme Court held that trial courts should consider a voluntary retirement at the age of sixty-five.  Id. at 537.  Nonetheless, the court stated that the receiving spouse's needs are still an important consideration and that "[e]ven at the age of 65 or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty."  Id.

Similarly, the Supreme Court in Antonelli, 242 Va. at 155, 409 S.E.2d at 119, acknowledged that in making support awards, trial courts must consider "bona fide and reasonable" employment

decisions which result in the payor spouse earning less income. Such decisions would include retirement, and we find this reasoning persuasive and applicable to the circumstances of this case. When considering the issue of spousal support, whether in a modification or initial award determination, the trial court must take into account the receiving spouse's needs and ability to provide for the needs, and balance those against the other spouse's ability to provide support, even when the payor spouse has retired in good faith at a "normal" retirement age. See Code § 20-107.1.

Spouses entitled to support "have the right to be maintained in the manner to which they were accustomed during the marriage, but their needs must be balanced against the other spouse's financial ability to pay." Floyd v. Floyd, 1 Va. App. 42, 45, 333 S.E.2d 364, 366 (1985). When considering an initial spousal support order or a modification, the trial court must consider each spouse's current circumstances, including the fact that a party has retired, the parties' plans and expectations associated with the retirement, and each parties' earning capacities and needs at the time of the hearing. However, the trial court cannot ignore the policy underlying Code § 20-107.1 which balances the parties' incomes or their capacities to earn income against their respective needs. As that balance applies to the facts of this case, Albert Stubblebine had provided most of the financial support during the marriage. After his retirement, he

had been gainfully employed and contributed significantly to his wife's support, up until the divorce, at a level that exceeded his retirement income. Geraldine Stubblebine suffers from several chronic diseases and is unable to work. Her one-half share of Mr. Stubblebine's two retirement pensions would provide a monthly income of $3,058,[3] while her evidence proved monthly expenses in the range of $5,200.

Albert Stubblebine, as his current activities demonstrate, is capable of gainful employment. However, regardless of whether Albert Stubblebine had chosen a more relaxed retirement rather than pursuing an active retirement, the fact remains that he is capable of gainful employment. Moreover, he worked and contributed to his wife's living standard until five months before the divorce. On these facts, the trial court did not abuse its discretion by imputing income to Albert Stubblebine in an amount based upon his recent earnings history. Accordingly, we affirm the trial court's decision.

Affirmed.

---

[3]Because the trial court based its spousal support award upon imputed income and not upon Albert Stubblebine's retirement income, we do not address whether a spousal support award based in part upon his retirement income would be in derogation of Code § 20-107.3(G).

Benton, J., dissenting.


For the following reasons, stated in my earlier dissent to the panel decision, <u>Stubblebine v. Stubblebine</u>, 21 Va. App. 635, 643-52, 466 S.E.2d 764, 768-72 (1996)(Benton, J., dissenting), I dissent.  I also join in Judge Elder's dissent except the discussion in his second paragraph stating that a trial judge may require a spouse who is retired and later divorced to abandon his or her retirement and reenter the workforce.

The evidence proved that the husband was sixty-four years of age, had twice retired during the marriage, and was a part-time consultant during his retirement when the marriage disintegrated and the parties separated.  During the divorce proceedings, both of the husband's consulting contracts were terminated.  Upon the evidence in this case, I would hold that the trial judge erred in requiring the husband to reenter the labor market and by imputing to the husband an ability to obtain employment paying $40,000 annually.

The evidence proved that during the marriage the husband was a career military officer.  The husband's military expertise was in the areas of military intelligence, and he was promoted to Commander of the United States Army Intelligence and Security Command.  In 1984, during the marriage, the husband retired from the United States Army after thirty-two years of service.

Following his retirement from the Army, the husband worked for a private sector defense contractor, BDM International, Inc.

He was employed as a vice president for intelligence systems. After six years of employment, he was forced to retire from that position in August 1990.

The parties were still married when the husband entered his second retirement at age sixty-one. Although the husband engaged in part-time activities for which he received payment, he did not reenter the labor market after his second retirement. Following his second retirement, the husband served as a member of the board of directors of several small consulting companies. As a director, he received a small stipend and reimbursement for expenses incurred for the companies. He was not an employee of those companies and, therefore, received no salary.

In addition to those activities, the husband acted as a part-time consultant to two government contractors during his retirement. The first consulting contract with a company called ERIM required him to consult four days a month and ended because of a lack of government funding. The second consulting contract was with Space Applications Corporation (S.A.C.), another defense contracting company. The contract required him to consult two days a month. The evidence proved that this contract expired and was not renewed by the company.

Thus, the evidence in this case proved that the husband had retired, indeed twice retired, prior to the separation of the parties and prior to the institution of the divorce proceedings. No evidence in the record proves or even suggests that the

husband retired from the Army or BDM except in accordance with a decision that he made in good faith in consideration of a reasonable retirement. No evidence proved that either the retirement from the Army or the retirement from BDM was unreasonable or unacceptable to the parties while they were married. The wife neither alleged nor proved that the husband's pre-separation retirement decisions were made in bad faith.

Citing <u>Pimm v. Pimm</u>, 601 So.2d 534, 537 (Fla. 1992), and <u>Avery v. Avery</u>, 548 So.2d 865, 866 (Fla. Dist. Ct. App. 1989), the majority concludes that the trial judge must consider the receiving spouse's needs and may impute income to the payor spouse even when the payor spouse has retired.[4] From a cursory reading, <u>Avery</u> appears to support the majority's view. The Florida Court of Appeals upheld a trial judge's order requiring a retired social security pensioner who "had diabetes and was in poor health" to pay the entire amount of his social security payments to support his fifty-eight-year-old wife. The trial judge imputed no income to the wife, who had worked throughout their ten-year marriage and who was still capable of working. <u>Id.</u> at 865.

Although I believe that <u>Avery</u> is wrongly decided and I would

---

[4]The husband does not dispute that the wife is unable to work because of her medical conditions. However, he does note that evidence in the record proved that the wife continues to smoke cigarettes after having lung cancer surgery and drinks four glasses of wine each evening aggravating her illnesses and complaints of shortness of breath.

not rely upon it, I also believe that the decision is grounded in large measure upon two factors expressly disclosed in the opinion, that are not applicable to this case. First, the husband "indicated his intention to go to work again to help support himself." Id. at 866. Second, the Court of Appeals offered the following disclaimer:

> We do not determine by this opinion that a husband who has reached the age of retirement must continue working in order to pay alimony to his wife in all cases. Each case must turn on its own facts, and we cannot say the trial court abused its discretion in the disposition of the issue of alimony in this case. This is especially true in the instant case where the evidence heard by the trial court regarding the sale of the business could lead to a conclusion that the husband was realizing more out of the sale than he admitted to in his testimony. [Footnote 1]. In pronouncing judgment, the trial court noted that, after having listened to the evidence "[the husband's] credibility is not very high with me."
>
> [Footnote 1] He stated that the payments he was receiving were being used to reduce a judgment against him, but he did not know the amount of the judgment, nor did he offer any documentary proof of the judgment or the payments he made on it. Thus, the evidence presented a murky picture at best of the husband's financial ability.

Id. (citation omitted). If, indeed, every case turns upon its peculiar facts, these facts suggest that Avery was grounded in factors relating to the husband's true financial condition and his credibility rather than the principle that a retired person must abandon retirement to support a spouse in financial need.

Pimm, a later Florida case involving a post-judgment

retirement, implicitly rejects the harshness of <u>Avery</u>.  In its decision certifying to the Supreme Court of Florida the question whether post-judgment retirement of a spouse is a change in circumstance, the Court of Appeals of Florida observed that it could not "conclude . . . that a 'voluntary' retirement under normal circumstances or at a normal or expected retirement age should be equated with such a voluntary diminution of income." <u>Pimm v. Pimm</u>, 568 So.2d 1299, 1300 (Fla. Dist. Ct. App. 1990), <u>approved</u>, 601 So.2d 534 (Fla. 1992).  The Court of Appeals explained the rationale for its decision rejecting a rule that would otherwise be "too severe":

> If the parties had remained married, they more than likely, as other retired people often do, would have expected to live on reduced income when the supporting spouse reached retirement age.  We are unwilling to hold, as a matter of law, that a supporting spouse in a dissolved marriage cannot rely on the reduced income at retirement as a change in circumstances that may be considered on a petition for modification of alimony.  To so hold would place many such supporting spouses in the position of being unable to retire at any age so long as their alimony obligations remained unchanged.

<u>Pimm</u>, 568 So.2d at 1301 (emphasis omitted).

In approving the decision of the Court of Appeals, the Florida Supreme Court also recognized the reality that retired persons expect to live on reduced income and noted that "the obligation to pay support to a former spouse is different from the obligation to pay child support."  <u>Pimm</u>, 601 So.2d at 537. Indeed, most working persons and their spouses have an

expectation that the working spouse's retirement will occur and intend to adjust their lifestyles. A reduction in spouses' lifestyles at retirement is neither an unexpected phenomenon nor punitive.

Although Virginia case law is sparse on this issue, in McGuire v. McGuire, 10 Va. App. 248, 391 S.E.2d 344 (1990), this Court tacitly approved the husband's early retirement from government employment at age fifty, "the retirement age permitted by federal law for law enforcement officers." Id. at 250, 391 S.E.2d at 346. This Court ruled that the husband's post-judgment early retirement, a voluntary career decision, was the proper basis for a motion to change support based on a change in circumstances. Implicit in this decision is the principle that a trial judge, when considering the factors under Code § 20-107.1, may not ignore a party's "long-standing" career decision to retire, albeit an early retirement. Id.

This case is not one in which the husband retired post-divorce or had an expectation of future retirement. The facts prove that the husband had already retired and the parties were living upon the husband's post-retirement income when they separated and later were divorced. If the parties had remained married, both would have shared in the change in lifestyle that resulted from the husband's diminished income. Nothing in this record justifies granting the wife a support award based upon a projection of earnings as if the husband had not retired. The

trial judge ignored the husband's pre-separation retirement and, in essence, forced the husband to abandon his retirement and reenter the labor market in order to pay more spousal support. I would hold that the trial judge erred in failing to give effect to the husband's pre-separation retirement.

Even if the trial judge had the authority to require the husband to abandon his retirement and seek employment, the evidence fails to prove that the husband is capable of finding employment that will give him additional annual income of $40,000. The trial judge's imputation of income to the husband was error because it was not based upon current circumstances.

> The courts of this Commonwealth are empowered to assess spousal support awards, not to penalize or reward either party to the marriage contract, but rather to do equity between the two and to protect society's interests in the incidents of the marital relationship. Code § 20-107[.1] defines several standards for balancing the respective needs and capacities of the husband and wife. The balance must be struck and awards made "upon the basis of the circumstances disclosed by the evidence at the time of the award."

Jacobs v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 57-58 (1979) (citation omitted). The trial judge made an assumption, not grounded in the evidence, that the husband could find employment.

The evidence proved that when the marriage ended in July 1991, the husband was receiving income from his Army retirement, the BDM pension, and a consulting contract. Furthermore, the evidence clearly proved that the part-time consulting contracts

were of limited duration, required an insignificant amount of his time, and were not voluntarily terminated.

During his testimony at the 1994 divorce proceedings, the husband testified that the part-time consulting contracts had terminated and that he had no income from any consulting contracts. He further testified as follows:

Q    Have you tried to get additional work as a consultant?

A    I have.

Q    What have you found out in trying to get additional work as a consultant?

A    The defense business is dead.  It's hard to do particularly when you're out away from the government for as long as I've been away.

Q    Do you have any other skills in the marketplace?

A    Not particularly.

                *    *    *    *    *    *    *

Q    Why don't you have any gainful employment at the present time?

A    Well, my real expertise is government, primarily intelligence, and the Defense Department is -- other cutbacks in the Defense Department have -- for all intents and purposes, budget cuts have eliminated most of the areas where I still have some expertise, and it's just -- there isn't any.

In view of the husband's retirement, his further testimony that he was not interested in other full-time employment is neither surprising nor unreasonable.

This evidence is unrebutted.  Furthermore, although the

evidence in the record proved that the husband had the physical and mental capacity to work, no evidence proved that the husband, age sixty-four at the time of the hearings, was employable. No evidence proved that any income-producing employment was available for the husband or that other consulting opportunities were available. The record contains unrefuted evidence that the husband's last two consulting contracts were involuntarily terminated. One contract had reached the end of its term and was not renewed by the defense contractor; the other terminated because of a loss of government funding.

On this evidence, the trial judge had no basis upon which he could have imputed $40,000 of income to the husband. Indeed, the figure seems to be derived from the expired consulting contract with ERIM, which provided compensation of $700 per day for services through September 30, 1993, for a total amount "not to exceed $40,000.00." However, the evidence proved that the defense industry, the environment in which the husband's skills are most suited, has experienced an economic decline. Both of the husband's part-time consulting contracts were with private sector defense contractors and were terminated because of loss of federal funds. No evidence supports a finding that the husband could enter the labor market and earn $40,000. Thus, the trial judge's decision imputing income was pure speculation.[5]

_____

[5]Citing <u>Brody v. Brody</u>, 16 Va. App. 627, 432 S.E.2d 20 (1993), and <u>Barnhill v. Brooks</u>, 15 Va. App. 696, 427 S.E.2d 209 (1993), the majority rules that the trial judge properly used evidence of recent past earnings in imputing income. Both of those cases

The wife contends that the husband's other activities prove that he is capable of engaging in full-time employment. The evidence proved that the husband had a long-standing interest in parapsychology and psychic phenomena. When he was an Army intelligence officer, he became interested in parapsychology and pursued its use as an intelligence gathering device. After he became Commander of the Army's strategic intelligence programs, he caused research to be conducted in these areas and promoted a concept called "remote viewing." In his retirement, he continued that interest and expends a substantial portion of his time investigating psychic phenomena.

During his retirement and before his marital separation, the husband became a member of the board of directors of a non-profit entity, Treatment and Research of Experienced Anomalous Trauma (TREAT). The husband testified that TREAT studies, researches, and investigates psychic experiences that people report and that have no known explanation. As a member of the board of directors of this non-profit entity, his expenses for activities with TREAT are reimbursed. However, he is not employed by TREAT and receives no salary. No evidence proved that any employment opportunity was available to him at TREAT. Also, no evidence proved that the husband could have obtained employment based on

involved spouses who voluntarily quit their employment. The evidence in this case is undisputed that the husband's contract was involuntarily terminated. Thus, I would hold that neither Brody nor Barnhill applies to these circumstances.

his studies of psychic phenomena.

Although the record establishes that the husband now spends most of his time pursuing his interests at TREAT, the record also establishes that the husband's interest in this matter is long-standing, intense, and consuming. The record clearly demonstrates that the husband's involvement in TREAT is akin to a hobby and provides him intellectual challenges and self-fulfillment. Proof that the husband has an interest that intellectually stimulates him and consumes his time in retirement does not provide a basis to assume that the husband had abandoned his retirement. Also, proof of the husband's good health and ability to contribute to society should not preclude his planned retirement.

Human experience teaches us that many people have long-standing plans to retire after a long employment career. Married couples often anticipate and expect to reduce their lifestyle and financial requirements. Where, as in this case, the working spouse has retired prior to separation and dissolution of the marriage, the decision to impute income to the working spouse is plainly wrong, absent some proof of bad faith. Moreover, evidence that the retired spouse remains active in the pursuit of hobbies and intellectual interests provides no basis to conclude that the spouse is "working." A spouse should not be penalized for pursuing his or her interests if they do not produce any income, cannot produce income, are unorthodox, or are

even unpopular to others.  By imputing a speculative amount of income, the decision penalizes lifestyle, where it is clear no such imputation would have been made had the retired spouse sat around, done nothing, and degenerated.

So long as the retirement decision was made in good faith, the decision to pursue interests in parapsychology, psychic phenomena, animal communications, and the like, must remain the choice of the retired person.  The majority opinion would essentially establish a precedent that a spouse of a retired person whose marriage has disintegrated may force the retired spouse to reenter the work force and work to an uncertain age to restore a lifestyle that predictably ended.  Absent evidence of bad faith, nothing in Code § 20-107.1 authorizes judges to interfere with decisions made by spouses in a marriage to retire at some point in their lives, to participate in interests special to them, and enjoy benefits for which they have worked their entire lives.  Such a policy is not one recognizing a surreptitious intent to deny income to another spouse, but, rather, recognizes that retirements do happen and that retired persons have a right to do absolutely nothing or anything unique in accordance with their abilities.

The record clearly established that the husband retired from two careers during the marriage and has spent his retirement consulting two to four days a month until his contracts were ended by federal funding cutbacks to defense contractors.  He now

spends a substantial portion of his time pursuing his interests in unusual psychic phenomena, an interest that he pursued for its intelligence potential while with the United States Army Intelligence and Security Command.

The evidence further proved that the husband's combined monthly retirement pay was $6,204, consisting of $5,432 from the Army and $772 from BDM. The wife received approximately one-half of the husband's total retirement pay. The evidence proved that she has monthly income of $3,058 from the husband and income from interest earned on her investments. Thus, the evidence does not support a claim by the wife that she is impecunious or destitute.

The record contains no evidence that the husband retired with the purpose of reducing his income to avoid or lessen spousal support payments. Indeed, the wife neither alleged nor proved bad faith. Moreover, the trial judge made no such findings. Thus, I would hold that the trial judge erred in imputing $40,000 additional annual income to the retired husband and in awarding the wife $1,000 in monthly spousal support so as to increase her monthly income from the husband to $4,058.

Elder, J., with whom Willis and Bray, JJ., join, dissenting.

As this Court has recognized, a spouse's entitlement to support and the amount of the award are matters committed to the sound discretion of the trial court. Steinberg v. Steinberg, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990). We will not disturb the trial court's decision unless some injustice has been done. Id. Based upon the evidence in the record, I would hold that the trial court abused its discretion when it imputed $40,000 in annual income to Albert Stubblebine (husband) and ordered him to pay Geraldine Stubblebine (wife) $1,000 in monthly spousal support.

Although neither this Court nor the Supreme Court of Virginia has previously so pronounced, I would hold that a trial court has the discretionary authority, under the proper circumstances, to require a spouse to abandon his or her retirement and to seek appropriate employment. A trial court's discretionary authority to impute income should not be precluded simply because the obligor spouse has retired in good faith. Rather, the trial court's discretionary determination must depend on the evidence adduced at trial, taking into account the parties' financial needs and current earning abilities. See Pimm v. Pimm, 568 So.2d 1299, 1301 (Fla. Dist. Ct. App. 1990), approved, 601 So.2d 534 (Fla. 1992); Avery v. Avery, 548 So.2d 865, 866 (Fla. Dist. Ct. App. 1989). In this case, several key pieces of evidence reveal that the trial court abused its

- 23 -

discretion in imputing income to husband and ordering him to pay $1,000 per month to wife in spousal support.

## I.

First, the trial court failed to give proper weight to the uncontested fact that husband retired twice before the parties separated. Wife presented no evidence that she objected to husband's retirement from the Army or from BDM. As Judge Benton observed in his dissent from the panel decision, "when considering the factors under Code § 20-107.1, [a trial court] may not ignore a party's 'long-standing' career decision to retire, albeit an early retirement." Stubblebine, 21 Va. App. at 647, 466 S.E.2d at 770 (Benton, J., dissenting). Neither may a trial court ignore the dependent spouse's acquiescence in that decision. Judge Benton's dissent accurately summarizes the facts and reaches the following conclusion, with which I agree:

> This case is not one in which the husband retired post-divorce or had an expectation of future retirement. The facts prove that the husband had already retired and the parties were living upon the husband's post-retirement income when they separated and later were divorced. If the parties had remained married, both would have shared in the change in lifestyle that resulted from the husband's diminished income. Nothing in this record justifies granting the wife a support award based upon a projection of earnings as if the husband had not retired. The trial judge ignored the husband's pre-separation retirement and, in essence, forced the husband to abandon his retirement and reenter the labor market in order to pay more spousal support. I would hold that the trial judge erred in failing to give effect to the husband's pre-separation

retirement.


                                II.

    Second, the trial court erred in imputing $40,000 annual

income to husband because the imputation was not based upon

current circumstances.  Spousal support awards must be made "upon

the circumstances disclosed by the evidence at the time of the

award."  Thomas v. Thomas, 217 Va. 502, 505, 229 S.E.2d 877,

889-90 (1976).  Nothing in the record proved that husband could

find employment comparable to his employment with ERIM, which had

paid him $40,000 annually.  In fact, the record contains no

information about current employment opportunities available to

husband.

    This case differs, therefore, from Brody v. Brody, 16 Va.

App. 647, 432 S.E.2d 20 (1993).  In Brody, the mother voluntarily

left a $54,000 per year job with the federal government to raise

her children.  The father petitioned the trial court for a

spousal support award, asking the court to impute to mother her

prior income.  We reversed the trial court's denial of the

father's petition, holding in part that the father produced

sufficient evidence to allow the trial court to project the

amount of earnings the wife would have earned had she continued

in her employment.  Id. at 651, 432 S.E.2d at 22.  We explained

that because the father produced evidence that the mother had

just earned $54,000 per year before voluntarily leaving her job,

the trial court had sufficient evidence with which to impute income.  Id.  See also Barnhill v. Brooks, 15 Va. App. 696, 427 S.E.2d 209 (1993)(holding that the trial court, in arriving at the amount of income to impute to the father, properly considered the father's income from his prior job, which the father had voluntarily left).  By contrast, in this case, husband's most recent employment (with ERIM in 1993) ended not because of husband's voluntary choice, but because his consulting contract expired.

Furthermore, the evidence of husband's recent past earnings was of limited worth considering the rapid deterioration of the defense industry in which husband was previously employed. Husband testified at trial that "[t]he defense business is dead.  It's hard to [find work as a consultant] particularly when you're out away from the government for as long as I've been away."  Testimony revealed that husband had few other marketplace skills.  Furthermore, wife presented absolutely no evidence to refute husband's evidence.  Again, Judge Benton's dissent summarizes the important facts and circumstances regarding this issue:

> [N]o evidence proved that the husband, age sixty-four at the time of the hearings, was employable.  No evidence proved that any income-producing employment was available for the husband or that other consulting opportunities were available.  The record contains unrefuted evidence that the husband's last two consulting contracts were involuntarily terminated. . . .

> On this evidence, the trial judge had no basis upon which he could have imputed $40,000 of income to the husband. Indeed, the figure seems to be derived from the expired consulting contract with ERIM, which provided compensation of $700 per day for services through September 30, 1993, for a total amount "not to exceed $40,000.00." However, the evidence proved that the defense industry, the environment in which the husband's skills are most suited, has experienced an economic decline. Both of the husband's part-time consulting contracts were with private sector defense contractors and were terminated because of loss of federal funds. No evidence supports a finding that the husband could enter the labor market and earn $40,000. Thus, the trial judge's decision imputing income was pure speculation.

See <u>Srinivasan v. Srinivasan</u>, 10 Va. App. 728, 396 S.E.2d 675 (1990).

### III.

Third, the trial court based its order on the out-dated financial needs of wife. The evidence proved that, at the time of trial on March 8-10, 1994, wife had a monthly income of $3,058 from her share of husband's two retirement pensions. At trial, wife presented an expense sheet which revealed total monthly expenses of $6,051.96. The trial court determined that wife's monthly expenses totaled approximately $5,200 per month, a figure that excluded wife's attorney's fees in consideration of the trial court's order that husband pay wife's attorney's fees. The trial court awarded wife $1,000 in monthly spousal support, which increased her monthly income to $4,058.

As husband correctly argues, the trial court calculated its

award based on figures that were <u>not</u> current, thereby abusing its discretion in concluding that husband should pay $1,000 in monthly spousal support to wife. <u>See</u> <u>Srinivasan</u>, 10 Va. App. at 735, 396 S.E.2d at 679 (stating that a spousal support award must be based upon current circumstances). The trial court failed to adjust wife's monthly expenses downward based on wife's own evidence. For example, wife testified that the following expenses were far less than those listed on her expense sheet (and in some instances nonexistent): food, maid service, yard work, car payments, car repair, car insurance, property repair and maintenance, clothing, and entertainment and vacations. Additionally, wife admitted that the majority of her expense sheet reflected expenses based on the year 1991, not 1994.

While generally a spouse entitled to support should be maintained in the style to which he or she was accustomed during the marriage, consistent with the other spouse's ability to pay, retirement at a normal age is an expected event. When this occurs, during the marriage or thereafter, both the husband and the wife frequently encounter somewhat lower standards of living. This does not mean that when one spouse is physically and mentally able to work at readily available employment, the needy spouse must live a life of destitution to accommodate the retired spouse's desire to remain retired. However, a spouse who has taken a legitimate, regular retirement at an appropriate age should not have income imputed to him or her simply to

accommodate the other spouse's desire to maintain more than a comfortable lifestyle, albeit somewhat less lavish than that enjoyed prior to the supporting spouse's retirement.

While wife suffers from several chronic illnesses and is unable to work, she was not shown to be impecunious or destitute or to have a substantial need for $1,000 per month additional spousal support. Wife owns a house valued at approximately $410,000, in which she has equity of $219,000. Furthermore, wife's daughter, son-in-law, and grandchildren live with wife in that house, and while they provide for wife's food and some other expenses, no evidence proved that they paid wife rent or other remuneration reflecting the privilege of living in wife's house.

For the foregoing reasons, I would reverse the trial court's decision.