## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Karen S. Rutledge

v.

Christopher A. Rutledge

October 7, 1996

Case No. CH93-291

BY JUDGE WILLIAM H. LEDBETTER, JR.

The primary issues in this divorce case are spousal support, retirement benefits under Virginia Code § 20-107.3(G), and attorney's fees.

*Background Facts*

The parties were married in Illinois on July 14, 1983. When Mr. Rutledge finished his tour of duty with the Navy in 1989, both parties obtained employment with E-Systems, Inc., in Fairfax County, Virginia. They purchased a home in Spotsylvania County, Virginia, and lived here until their separation three years later.

In February of 1992, Mr. Rutledge took a job transfer with E-Systems to St. Louis, Missouri. Both parties favored the transfer because it would put them closer to their families (both of them are from Illinois) and because, supposedly, the cost of living would be less there than in Virginia. It is undisputed that both parties were aware that although the transfer amounted to a job promotion for Mr. Rutledge, he would probably suffer a diminution in annual income because of loss of overtime which was so readily available at the Virginia site. Further, it is undisputed that the parties agreed that Mrs. Rutledge would remain in Virginia until the marital residence was sold, at which time she would join Mr. Rutledge in Missouri.

Mr. Rutledge moved to St. Louis, rented a house, and began his new assignment there. Mrs. Rutledge stayed in the marital residence here, listed the house for sale, and continued to work at E-Systems in Fairfax County. The parties visited one another several times.

In August of 1992, while visiting in Virginia, Mr. Rutledge informed Mrs. Rutledge that he wanted a divorce. Mr. Rutledge's explanation for this is at odds with Mrs. Rutledge's testimony, but the point is inconsequential now in light of the parties' agreement that the divorce should be on the no-fault ground of one-year separation under Virginia Code § 20-91(9). In any event, it is clear to the court that the announcement caught Mrs. Rutledge by surprise and resulted in a considerable period of emotional distress.

Over the next several months, Mrs. Rutledge attempted reconciliation to no avail. She continued to live in the marital residence, Mr. Rutledge continued to live in St. Louis, and the house continued on the market. During the period, Mr. Rutledge made all the mortgage payments on the house. For a while, he provided other monies to Mrs. Rutledge, but those payments ceased shortly after he told her he wanted a divorce.

The house finally sold in May of 1994. Because the sale price was less than the mortgage balance, Mr. Rutledge had to borrow money from his credit union to pay $6,800.00 at closing.

Upon the sale of the house, Mrs. Rutledge left her job at E-Systems and moved to Pekin, Illinois, her hometown. After working for a while at Kroger's, a grocery store, she secured employment at Export Packaging, where she still works. She also has a part-time janitorial job. She has purchased a small house and a new vehicle.

Mr. Rutledge continues to reside in the St. Louis area, working for E-Systems. He rents a three-bedroom house. He, too, has purchased a new vehicle.

Mr. Rutledge is 31 years old. He is in good health. Mrs. Rutledge is 33 years old. She is diabetic and needs regular dosages of insulin, but there is no evidence that her condition is disabling.

No children were born of the marriage.

### Status of the Case

Mrs. Rutledge initiated this suit for divorce on the ground of desertion on August 26, 1993. Mr. Rutledge filed a cross-bill requesting a divorce based on one-year separation.

Evidence was taken by deposition de bene esse on August 10, 1994, and October 21, 1994. Then, inexplicably, nothing further transpired until

additional depositions were taken on April 25, 1995. Mr. Rutledge changed counsel. Then, further depositions de bene esse took place on January 4, 1996, and June 15, 1996. (Much of the testimony in the latter depositions either duplicated or updated evidence that had been presented in the earlier depositions.)

Finally, counsel agreed to submit all disputed issues to the court on the transcripts of the depositions and memoranda, without a hearing ore tenus. The transcripts have been filed, memoranda have been submitted, and this opinion addresses all issues before the court for adjudication.

### Divorce

Mrs. Rutledge has abandoned her effort to obtain a fault-based divorce and concedes that Mr. Rutledge may be awarded a no-fault divorce on his cross-bill. The evidence clearly establishes that the parties have lived separate and apart, without interruption, at least since August of 1992. Therefore, Mr. Rutledge is entitled to a no-fault divorce under § 20-91(9).

### Property Division

Some evidence regarding the parties' marital assets and debts was presented in the earlier depositions. Now, however, the parties inform the court that they seek no equitable distribution under § 20-107.3 *except* that Mrs. Rutledge asks the court to consider an award of a percentage of the marital share of Mr. Rutledge's retirement benefits under subsection G of § 20-107.3. Mr. Rutledge objects.

The parties have divided their tangible assets (primarily, household furnishings and vehicles) and intangible assets (a small amount of cash in banks and a relatively small number of unmatured savings bonds) and have announced that they are satisfied with the division.

With respect to Mr. Rutledge's retirement benefits, the court declines to direct payment of any of those benefits to Mrs. Rutledge.

These retirement benefits have accrued to Mr. Rutledge through his employment at E-Systems. The "marital share" of the benefits, from which Mrs. Rutledge would be entitled to a percentage if she otherwise met the criteria for such an award, is defined as that portion of the total interest, the right to which was earned during the marriage and before the separation of the parties. The parties lived together for less than three years after Mr. Rutledge went to work for E-Systems. If he works there for a total of thirty years, for example, the marital share would be less than 10% of the benefits. By statute,

the maximum amount that the court could award to Mrs. Rutledge is 50% of the marital share. Therefore, Mrs. Rutledge's percentage of Mr. Rutledge's retirement benefits would be, under the best of circumstances, 5% of those benefits as and when they are paid. Mrs. Rutledge concedes, as well she should, that such an award would be of "minimal benefit" to her. When an award of retirement benefits would be *de minimis*, the court should not make the award.

Further, as noted above, the evidence shows that the parties have divided their other marital assets by agreement. Under such circumstances, the court has no basis to award a "maximum percentage" or any other percentage of the marital share of retirement benefits. This is because retirement benefits are marital assets, and a division of those benefits under § 20-107.3 is part of the scheme of equitable distribution in Virginia. An equitable distribution of marital assets envisions a property division that is just, fair, and equitable *overall*. A party cannot point the court to one isolated asset and ask for the maximum share of that asset and at the same time ask the court to ignore the identity and value of the other assets and the manner by which they were divided.

Finally, giving full consideration to the statutory factors enumerated in § 20-107.3(E), and such evidence as the parties have presented with regard to their marital assets and debts, the court is of the opinion that Mrs. Rutledge is not entitled to a larger share of the marital assets than she had already received pursuant to the parties' extra-judicial division.

### Spousal Support

Despite the lack of precision in the testimony concerning the parties' current incomes, it appears from the evidence that Mr. Rutledge's gross annual income is $45,500.00, and Mrs. Rutledge's gross annual income is $20,200.00.

Mrs. Rutledge complains that Mr. Rutledge is earning $5,000.00 less in 1996 than he was earning with the same company in 1992. However, Mr. Rutledge has fully and persuasively explained the diminution. It is primarily due to "shift deferentials" and the lack of overtime at the St. Louis facility. Further, Mrs. Rutledge knew that this circumstance was a possibility, even a probability, if Mr. Rutledge took the job transfer, but she nonetheless concurred for the reasons mentioned above. She cannot be heard four years later to argue, during divorce litigation, that income should be imputed to him or that this loss of income unfairly penalizes her.

Similarly, Mr. Rutledge argues that Mrs. Rutledge's income is $10,000.00 less than she was earning at E-Systems when she quit that job and left Virginia in May of 1994. Income should be imputed, he says, because she voluntarily reduced her income when she moved to Illinois. The argument is flawed.

First, the evidence establishes that Mrs. Rutledge's *base salary* at E-Systems in 1994 was only about $18,000.00. The additional amount she earned that year and in the previous year (1993) came from an inordinate amount of overtime. She explained why she worked so much overtime during that period. First, Mr. Rutledge had stopped sending money to her (except for the house payments) so that her financial resources were suddenly significantly reduced. Second, she needed something to "occupy her time" since she was in Virginia far away from her spouse and family; her husband had said he was divorcing her and had no intention of reuniting in St. Louis, as originally planned; and she was emotionally distressed by these events. In essence, she felt "stranded." Under such circumstances, it is understandable that she would work long hours without intending to do so on a permanent basis. Under such aberrational circumstances, the amount she earned during that relatively short period is not converted into "earning capacity" under § 20-107.1 for deciding spousal support issues in divorce litigation.

*Srinivasan v. Srinivasan,* 10 Va. App. 728 (1990), held that a spouse may not choose a low-paying position that penalizes the other spouse. Under such circumstances, the court may impute income to the party seeking spousal support. This conclusion logically flows from the proposition that one who seeks spousal support must earn as much as he or she *reasonably* can to reduce the amount of support needed. See *Baytop v. Baytop,* 199 Va. 388 (1957); *Butler v. Butler,* 217 Va. 195 (1976); *Calvert v. Calvert,* 18 Va. App. 781 (1994); *Cockran v. Cockran,* 14 Va. App. 827 (1992); also see *Stubblebine v. Stubblebine,* 21 Va. App. 635 (1996).

A reduction in income resulting from a voluntary employment decision does not *require* a corresponding reduction in the payor spouse's support obligations or in the payee spouse's support entitlement. Rather, a trial court must look at all the attendant facts and circumstances to determine whether imputation of income is appropriate.

Here, it is uncontroverted that Mrs. Rutledge left her employment at E-Systems in Virginia and took a job (or combination of jobs) in Illinois making less money. It is also uncontroverted, however, that at the time she left E-Systems, she was earning an abnormally high amount of income because of the amount of overtime she worked. The reasons for this overtime have been explored hereinabove. Mrs. Rutledge could not be expected to continue such a rigorous pace. The amount of her earnings in 1993 and the first five months

of 1994 do not represent or accurately reflect her true earning capacity. Her income was artificially, and temporarily, inflated. Actually, Mrs. Rutledge's base salary at E-Systems in 1994 was *less* than her current income. Viewed from that perspective, she has improved her earnings by leaving E-Systems and returning to Illinois. The court also notes that a portion of Mrs. Rutledge's current income is derived from a second job — manual labor — thereby negating any argument that her departure from E-Systems was for the purpose of comfort and relaxation.

Finally, the court finds that Mrs. Rutledge's departure was reasonable and in good faith. When she learned that she would not be joining her husband in St. Louis, she was "stranded" here to sell the house and to live and work far away from her family and friends. She had no reason to stay here. Her desire to return to a place close to her family was a primary factor in her concurrence with Mr. Rutledge's decision to transfer to St. Louis. In other words, she thought she would be returning to the midwest as early as 1992. That expectation and desire did not suddenly cease when Mr. Rutledge decided in 1994 that she would not go to St. Louis to be with him.

For the foregoing reasons, the court is of the opinion that the evidence in this case does not merit an imputation of income to either Mr. Rutledge or Mrs. Rutledge.

Considering all the factors in Virginia Code § 20-107.1, especially the significant disparity in their incomes, their respective liabilities, their earning capacities and employment histories, and the circumstances of the marital breakup, the court is of the opinion that Mr. Rutledge should pay spousal support to Mrs. Rutledge in the amount of $300.00 per month beginning in November of 1996, payable on or before the 10th day of each month, until terminated by law or by order of an appropriate court.

### *Attorney's Fees*

Upon consideration of the comparative financial resources and obligations of the parties and all the other circumstances of the case, Mrs. Rutledge will be awarded attorney's fees in the amount of $1,000.00. The costs will be assessed equally to the parties.