COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


DIANA DAMSCHRODER
                                         MEMORANDUM OPINION* BY
v.    Record No. 0889-98-2              JUDGE SAM W. COLEMAN III
                                              APRIL 27, 1999
JOHN WALLACE PATTERSON

              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                       Randall G. Johnson, Judge

              Robert W. Partin (Richard L. Locke;
              Mezzullo & McCandlish, on brief), for
              appellant.

              Mary Burkey Owens (Cowan & Owen, on brief),
              for appellee.


     John Wallace Patterson petitioned the trial court to reduce

his spousal support obligation to his former wife Diana

Damschroder, based on a reduction in his earnings.  After ore

tenus hearings, the trial court determined that Patterson lost his

employment involuntarily but was voluntarily underemployed.

Accordingly, the trial court imputed income to Patterson.  Based

on its findings, the trial court ordered a reduction in spousal

support from $5,000 to $2,000 per month.  On appeal, Damschroder

contends (1) that the trial court erred in determining that

Patterson's unemployment was involuntary, (2) that a finding of

--------------------------------

     *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

involuntary underemployment required the court to deny Patterson's petition for reduction in spousal support obligations, and (3) that the trial court erred by imputing an income not supported by the evidence.  Finding no error, we affirm the trial court.

## I.   BACKGROUND

On appeal, we view the evidence and all reasonable inferences in the light most favorable to the prevailing party.  See Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992).  At the time of the final divorce decree, Patterson was an equity partner in a large Richmond law firm earning $160,000 per year.  The trial court awarded spousal support to Damschroder at $5,000 per month.  Soon after the divorce, the law firm's executive committee informed Patterson of their intention to terminate him based on his low productivity.  In accordance with Patterson's employment separation agreement, he continued to collect his usual monthly pay for one year.

The managing partner of the law firm testified that he had communicated concerns about productivity to Patterson before they decided to terminate him.  With the exception of one or two years between 1989 and 1995, Patterson's billable hours were lower than what the firm considered normal for an equity partner.  However, when asked, the managing partner could not state that he had ever explained to Patterson that the firm would end his employment if he failed to increase his productivity.  Additionally, Patterson testified that the firm never advised him that he would face

-

termination if he failed to increase his billable hours. Patterson testified that the firm's decision to end his employment shocked him.

Shortly after the firm notified Patterson of his termination, Patterson sought legal employment with one of his larger clients based in Richmond. Although the former client never officially rejected Patterson, Patterson determined that he would likely receive no offer. He also sought legal employment through a Washington, D.C. outplacement firm. Patterson applied for some twenty-eight to thirty positions and received no offers. He testified that he was willing to go almost anywhere and that he had actively pursued positions in California and Kazakhstan. In the Richmond area, Patterson sought leads from his former clients, but received none. Patterson also contacted friends and classmates, but to no avail. After being out of work for nearly a year and having received no offers for legal positions, Patterson explored other options and chose to open a cigar franchise in Savannah, Georgia.

Several months later, Patterson filed a petition seeking a termination or reduction in his spousal support obligation. After hearing evidence ore tenus, the trial judge determined that Patterson was not voluntarily unemployed. However, the trial judge also determined that Patterson failed to show that he fully exhausted potential employment opportunities in Richmond. The judge also determined that Patterson could have found employment

-

with a Richmond firm earning at least half his prior salary and imputed that amount of income to Patterson.  Accordingly, the trial judge reduced the spousal support payments to comport with the imputed income.

## II.  ANALYSIS

We will not disturb a trial court's decision on appeal unless plainly wrong or without evidence to support it.  See Jennings v. Jennings, 12 Va. App. 1187, 1189, 409 S.E.2d 8, 10 (1991).  Upon petition of either party, a trial court may alter spousal support provided there has been a material change of circumstance.  See Code § 20-109.  "The moving party in a petition for modification of support is required to prove both (1) a material change in circumstances and (2) that this change warrants a modification of support."  Reece v. Reece, 22 Va. App. 368, 373, 470 S.E.2d 148, 151 (1996).  Without question the termination of Patterson's employment constituted a material change in circumstances.  The dispositive issue is whether Patterson's change in circumstance warranted a modification of his support obligation.

### A.  VOLUNTARY TERMINATION

#### 1.  LEGAL STANDARD

In determining whether an adverse change in circumstances warrants a diminution in a support obligation, the trial court must consider, among other things, whether the changed circumstances arose from the obligor's voluntary actions.  Where

-

the changed circumstances result from the obligor's misconduct or neglect, the Supreme Court has held the changed circumstances are the product of the obligor's voluntary actions.  See Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986) (citing Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975); Crosby v. Crosby, 182 Va. 461, 466, 29 S.E.2d 241, 243 (1944)). For example, where an obligor's income changed when his employer terminated him, the change in circumstances did not warrant modifying the support obligation because the employer fired the obligor for theft.  See Edwards, 232 Va. at 112-13, 348 S.E.2d at 261.

Damschroder contends that the trial court misunderstood and misapplied the proper legal standard.  Damschroder argues that the trial judge focused solely on the element of misconduct to the exclusion of negligent or voluntary acts.  We agree with Damschroder that simply showing that an obligor's loss of job did not result from misconduct is insufficient to warrant a change in the obligor's spousal support obligation.  However, Damschroder mischaracterizes the trial judge's holding and rationale for that holding.

Having heard the evidence, the trial judge concluded that Patterson's termination was not for misconduct and was not voluntary.  The trial judge stated that the evidence was in conflict as to whether Patterson neglected the opportunities he had to increase his production.  The managing partner testified

-

that Patterson "probably" could have increased his billable hours. Alternatively, Patterson testified that he had no control over his billable hours because they rose and fell with the fortunes of his clients. The trial judge noted the absence of evidence showing that Patterson neglected his clients and found that, on the contrary, the evidence showed that his clients were very satisfied with his work. Additionally, there was evidence that Patterson had never been a "rainmaker" for the firm, and there was no testimony that he refused or ignored opportunities to solicit new clients. Thus, the trial court considered the evidence and determined that the evidence showed that Patterson had not neglected his professional activities.

In his letter opinion, although the trial judge devoted considerable attention to the difficult issue of whether Patterson lost his job because of misconduct, he also considered whether Patterson lost his job due to neglect or other voluntary actions. Accordingly, we find that the trial court applied the correct standard in determining whether Patterson's loss of employment warranted a change in spousal support.

## 2. BURDEN OF PROOF

Damschroder contends that the trial judge erroneously placed the burden on her to prove that Patterson lost his job due to misconduct. As support for her argument, Damschroder states that Patterson failed to carry his burden of demonstrating that his termination was involuntary, and therefore, the trial judge must

-

have reached his conclusion based on an erroneous application of the burden of proof. We disagree.

Absent specific evidence to the contrary, we presume that the trial court based its decision on the evidence presented and properly applied the law. See Williams v. Williams, 14 Va. App. 217, 221, 415 S.E.2d 252, 254 (1992).

The burden is on the moving party to establish that the change in circumstances was not voluntary. See Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991). The trial judge stated in his letter opinion that he placed the burden of proof on Patterson, and we find that Patterson produced sufficient evidence to support the trial judge's conclusion that he proved by a preponderance of evidence that his termination was not voluntary.

We have previously referred to much of the evidence which Patterson presented to satisfy his burden of proof. Patterson testified that he never refused work, that the firm never informed him that a failure to increase production would result in termination, that his billable hours were out of his control, that firm management had ulterior motives in terminating him, that he performed substantial administrative and other functions for the firm, and that the firm's decision to terminate him came as a complete surprise. Although the managing partner warned Patterson about his low productivity at least twice and opined that Patterson "probably" could have increased his hours, Patterson

-

produced sufficient evidence to establish that his loss of employment was not voluntary or the result of wrongful conduct.

## B. IMPUTATION OF INCOME

### 1. Legal Standard

When a spousal support obligor suffers a reduction in income resulting from a voluntary employment decision, that reduction in income will not warrant a corresponding reduction in the support obligation. See Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (en banc). "Accordingly, a court may impute income to a party who is voluntarily unemployed or underemployed." Id. (internal quotation marks omitted). The trial court determined that Patterson's loss of employment was involuntary but that Patterson's job search in Richmond was insufficient to avoid imputation of income. The trial court imputed income equal to half of Patterson's prior salary. Based on the amount of imputed income, the trial judge calculated the amount to reduce Patterson's support obligation. Damschroder argues that upon finding that Patterson was voluntarily underemployed it was error for the court not to dismiss Patterson's request for a reduction in support. We disagree.

In support of her argument, Damschroder cites Edwards, 232 Va. 110, 348 S.E.2d 259, Antonelli, 242 Va. 152, 409 S.E.2d 117, and Commonwealth, Dept. of Soc. Services ex rel. Ewing v. Ewing, 22 Va. App. 466, 470 S.E.2d 608 (1996). In each of the cited

-

cases, obligor's request for reduction in support obligations was denied.  However, in each case, the _entire_ loss of income resulted from the obligor's voluntary actions.  Here, the trial court found that Patterson was involuntarily unemployed but incurred approximately half the reduction in his income voluntarily.  The underlying standard reflected in the three cited cases is that in order to warrant a reduction in his support obligation, Patterson "must show that his lack of ability to pay is not due to his own voluntary act or because of his neglect."  Hammers, 216 Va. at 31-32, 216 S.E.2d at 21; see Antonelli, 242 Va. at 154, 409 S.E.2d at 119; Edwards, 232 Va. at 112-13, 348 S.E.2d at 261; Ewing, 22 Va. App. at 470-71, 470 S.E.2d at 610-11.  Applying this standard, the trial court reduced Patterson's support obligation only to the extent that his reduction in income was voluntarily incurred.  Accordingly, the trial court applied the proper legal standard.

### 2.  Calculation of Imputed Income

Based on the record, the trial court determined that it would be unrealistic to assume that Patterson could have moved to another firm and maintained the same level of pay he had previously enjoyed.  However, the court determined that a Richmond law firm would have paid Patterson at least half of what he had earned in order to reap the benefits of his experience and his "very satisfied" clients.  The record upon which the trial court based that determination included evidence

-

of Patterson's age, the nature of his legal expertise, and the type of clients that he had. Additionally, there was testimony that Patterson could have brought to another firm approximately $50,000 gross receivables, and testimony that the amount of gross receivables would depend on the particular year, for example, one client generated business that ranged from $5,000 to $100,000 depending on the year.

Patterson, who prevailed in obtaining a support reduction, does not appeal the imputation of income to him of $62,064. However, Damschroder contends that the evidence does not support the trial court's calculation of imputed income. We disagree.

A spouse's entitlement to an award and the amount of that award are matters committed to the sound discretion of the trial court. See Stubblebine, 22 Va. App. at 707, 473 S.E.2d at 74. In modifying a spousal support order, Code § 20-109 instructs the trial court to consider the factors set forth in subsection (E) of Code § 20-107.1. These include earning capacity, education, skills, training, and age. See Code § 20-107.1. We find that there was sufficient evidence in the record for the trial court, by applying the factors of Code § 20-107.1 to impute $62,064 of income to Patterson.

In sum, we find that the trial court properly determined that Patterson lost his job involuntarily and that the trial court had sufficient evidence to impute $62,064 of income to Patterson. Accordingly, we affirm the trial court's decision

-

reducing Patterson's spousal support obligation from $5,000 to $2,000.

<u>Affirmed.</u>
