COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Petty, Beales and Senior Judge Frank
Argued in Richmond, Virginia


AMANDA SWANSON NIBLETT
                                                          OPINION BY
v.      Record No. 0716-15-1              JUDGE WILLIAM G. PETTY
                                                     DECEMBER 15, 2015
JASON DANIEL NIBLETT


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

Breckenridge Ingles (Monique W. Donner; Martin, Ingles &
Hensley, LTD, on briefs), for appellant.

Richard C. Langhorne for appellee.


Amanda Swanson Niblett ("mother") appeals the trial court's refusal to impute income to

Jason Daniel Niblett ("father"), for purposes of establishing father's initial child support

obligation, after the court found father was voluntarily unemployed because of his incarceration.

We conclude the trial court erred in not considering father's recent past earnings; accordingly,

we reverse and remand to the trial court.


I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  In this case, father

was the prevailing party in the trial court.

Mother and father were married on or about May 8, 2010 and have two children.  Mother

was granted a divorce on the grounds of father's adultery with a minor female who was residing

in the home of the parties. Father was convicted of crimes related to his sexual conduct with the minor female and sentenced to an active three-year penitentiary sentence. He has remained incarcerated since his arrest in March 2014.

Father testified that before he was incarcerated he had worked for nine and a half years as a car salesman. He also testified that he had some training in vehicle reconditioning and had a two-year degree in arts and sciences. In 2013, father earned approximately $85,700 as a commissioned car salesman. After father's arrest in March 2014, his employer continued to pay him a base salary of $3000 per month through December 2014. Father's 2014 W-2 listed wages of approximately $54,500 from this job.

At the April 3, 2015 hearing regarding child support, the parties did not dispute that due to father's incarceration he had no income for purposes of calculating the presumptive child support amount. Nevertheless, mother argued that father was voluntarily unemployed because he voluntarily chose the conduct that resulted in his incarceration. Mother therefore argued that the trial court should impute father's pre-incarceration income to him, and thus deviate from the presumptive child support guidelines.

Father argued that he would have no source of income until he was released from confinement. Father further argued that it was speculative whether any car dealership would hire him in the future now that he had two felony convictions and was required to register as a sex offender. Father urged that even if the court found that father was voluntarily unemployed, it should nevertheless refuse to impute income because future earnings were speculative.

In response, mother argued that although future income might be speculative, case law requires the court to look to *past* wages, and to consider what father "was making before his criminal acts got him locked up." Mother asked the court to impute those recent past earnings to father.

The court found father was voluntarily unemployed because he was unable to work due to his own voluntary acts. The court declined to impute income, however. The court reasoned that based on this Court's opinion in Donnell v. Donnell, 20 Va. App. 37, 455 S.E.2d 256 (1995), it was precluded from imputing income. Although the court was "not sure [it] like[d] that result," it reasoned that "to pick an amount out of the air, essentially, as to what his income would be would be speculating as against the requirements of the Jacobs[ v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979),] and the Payne[ v. Payne, 5 Va. App. 359, 363, 363 S.E.2d 428, 430 (1987),] case[s]." The court then awarded the presumptive statutory minimum amount of $104 per month. Mother timely appealed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness. Thus, we will not invalidate a court's decree unless the only reasonable interpretation thereof requires invalidation." Stiles v. Stiles, 48 Va. App. 449, 453, 632 S.E.2d 607, 609 (2006) (quoting Riggins v. O'Brien, 263 Va. 444, 448, 559 S.E.2d 673, 675-76 (2002)).

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Oley v. Branch, 63 Va. App. 681, 699, 762 S.E.2d 790, 799 (2014). Child support decisions, like "[s]pousal support determinations[,] typically involve fact-specific decisions best left in the 'sound discretion' of the trial court." Brandau v. Brandau, 52 Va. App. 632, 641, 666 S.E.2d 532, 537 (2008) (quoting McKee v. McKee, 52 Va. App. 482, 489, 664 S.E.2d 505, 509 (2008) (*en banc*)). The court's discretion, however, is not without bounds. The General Assembly has included mandatory steps that a court must follow when exercising its discretion

- 3 -

in calculating child support. See generally Code § 20-108.1. As a result, the court's calculation of child support obligations is a combination of mandatory steps and broad discretion. "[U]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Milam v. Milam, 65 Va. App. ___, ___ S.E.2d ___, ___ (Nov. 17, 2015).

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

Landrum v. Chippenham & Johnston-Willis Hosps., 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (alteration in original) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)).

### B. THE STATUTORY SCHEME FOR DETERMINING CHILD SUPPORT

"The court's paramount concern when awarding child support is the best interest of the children." Stiles, 48 Va. App. at 456, 632 S.E.2d at 611; L.C.S. v. S.A.S., 19 Va. App. 709, 717, 453 S.E.2d 580, 585 (1995) ("In setting an award of child support, the 'primary issue before a trial court judge is the welfare and best interests of the child, not the convenience or personal preference of a parent.'" (quoting Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993))). "The court must consider the basic needs of the child, the parent's ability to pay, and to the extent that the parent is able to provide more than the basic necessities of life, the degree to which the child should reasonably share in his or her parents' prosperity." Conway v. Conway, 10 Va. App. 653, 658, 395 S.E.2d 464, 466-67 (1990).

### 1. The Rebuttable Presumption

The starting point in any award of child support is the presumptive calculations set out in Code § 20-108.2. In calculating child support, a "court is [first] required to determine the presumptive child support amount by using the statutory guidelines." Id. "The guidelines in Code § 20-108.2 require a court to calculate the 'presumptive amount of child support as a percentage of the parents' combined gross monthly incomes.'" L.C.S., 19 Va. App. at 717, 453 S.E.2d at 585 (quoting Barnhill v. Brooks, 15 Va. App. 696, 699, 427 S.E.2d 209, 212 (1993)). "The amount of child support under the child support guidelines must be based on the parents' actual gross income." West v. West, 53 Va. App. 125, 135, 669 S.E.2d 390, 395 (2008) (citing Code § 20-108.2(C)). "There is a rebuttable presumption that the amount determined in accordance with the statutory guidelines, Code § 20-108.2, is the correct award." Brooks v. Rogers, 18 Va. App. 585, 591, 445 S.E.2d 725, 728 (1994).

### 2. Imputation of Income for Voluntary Unemployment

Nevertheless, the amount calculated by applying the guidelines is presumptive only; other evidence may be sufficient to rebut that presumption. Section 20-108.1 expressly identifies fourteen factors that are relevant in determining if the trial court is warranted in varying from the presumptive amount, and the statute additionally provides authority for the court to consider "[s]uch other factors as are necessary to consider the equities for the parents and child." Code § 20-108.1(B)(15). One of the Code § 20-108.1 factors is: "Imputed income to a party who is voluntarily unemployed or voluntarily under-employed . . . ." Code § 20-108.1(B)(3).

Even "[b]efore the presumptive guidelines came into effect and the law specifically allowed the imputation of income, the Virginia Supreme Court had already recognized that the key factor [in determining child support] was the spouse's ability to pay and not necessarily the

amount of actual earnings."[1]  Bishop Cochran v. Cochran, 14 Va. App. 827, 830, 419 S.E.2d

419, 421 (1992) (citing Hawkins v. Hawkins, 187 Va. 595, 600, 47 S.E.2d 436, 439 (1948)).

Section 20-108.1(B)(3) "does not expressly require the court to impute income to a parent found

to be voluntarily unemployed, but such a reading is implicit both in the text of the statute itself

and in this Court's prior opinions interpreting that text."  Hamel v. Hamel, 18 Va. App. 10,

12-13, 441 S.E.2d 221, 222 (1994); see also Blackburn v. Michael, 30 Va. App. 95, 103, 515

S.E.2d 780, 784 (1999) (reversing a trial court's refusal to impute income to voluntarily

unemployed mother for spousal support purposes even though it had imputed income for child

support purposes).  This requirement naturally flows from the principle that "[t]he general rule in

Virginia is that the amount of child support depends not solely upon the child's needs, but also

upon the ability of a parent to provide support," and the "ability of a parent to pay support is

determined not merely by the actual income of the payor parent, but also on the ability to earn."

Peter N. Swisher, Lawrence D. Diehl, & James R. Cottrell, Virginia Family Law: Theory,

Practice & Forms § 10:5 (2015).  "Following a divorce, a parent may not voluntarily pursue low

---

[1]

> Child support guidelines were established by Congress to assure that both the child's needs and the parent's ability to pay are considered in determining the amount of support awards and to decrease the disparity in the amount of awards . . . .  In accord with the Federal law, 42 U.S.C.A. § 667(a), the Virginia General Assembly enacted a statute incorporating the guidelines.  Code § 20-108.2.  As originally enacted, the guidelines were not binding on trial courts.  1988 Va. Acts c. 907.  However, in order to make its program of family support "more effective in achieving its objectives," Congress amended 42 U.S.C.A. § 667 to require that the amount of child support obligation as determined by the guidelines be a rebuttable presumption "in any judicial or administrative proceeding for the award of child support."  Pub.L. 100-485, § 103(b).  The Virginia General Assembly amended § 20-108.2 to mirror the Federal law.  1989 Va. Acts c. 599.

Richardson v. Richardson, 12 Va. App. 18, 20, 401 S.E.2d 894, 895 (1991).

paying employment 'to the detriment of support obligations to the children.'" Niemiec v. Dep't

of Soc. Servs., Div. of Child Support Enf't ex rel. Niemiec, 27 Va. App. 446, 451, 499 S.E.2d

576, 579 (1998) (quoting Brody, 16 Va. App. at 651, 432 S.E.2d at 22); see also Bishop

Cochran, 14 Va. App. at 830, 419 S.E.2d at 421 ("[W]hen one makes a job change to the

detriment of one's family, it is not the family who should suffer but the one who made the job

change."). "As such, except as provided in Code § 20-108.1(B)(3), a trial court determining

child support is *required* to impute income to a parent who is found to be voluntarily

underemployed." [2] Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (emphasis added).

---

[2] Section 20-108.1(B)(3) sets out circumstances where a party's choice to forgo more lucrative employment does *not* require the imputation of income. Additionally, this Court has found imputation of income inappropriate where the party's employment decision was not "voluntary unemployment" or "voluntary under-employment" in view of the circumstances of the case. See, e.g., deCamp v. deCamp, 64 Va. App. 137, 152-53, 765 S.E.2d 863, 871 (2014) (holding that spouse was not required to return to work immediately upon divorce to avoid judicial imputation of income); McKee v. McKee, 52 Va. App. 482, 490, 664 S.E.2d 505, 509 (2008) (*en banc*) (holding that a previously unemployed spouse was not required to obtain immediate employment upon divorce); Broadhead v. Broadhead, 51 Va. App. 170, 181, 655 S.E.2d 748, 753 (2008) (holding that a father was not voluntarily underemployed when he based his employment decision on ability to maintain custody arrangements); Reece v. Reece, 22 Va. App. 368, 376-77, 470 S.E.2d 148, 152-53 (1996) (holding that, where husband had strong familial ties to Richmond, he was not voluntarily underemployed based on his refusal of a job opportunity requiring him to relocate to a different state). It is only when considering all the facts of the case that the trial court can determine whether, in the party's current position, he or she is voluntarily unemployed. Broadhead, 51 Va. App. at 181, 655 S.E.2d at 753.

Recently, in Murphy v. Murphy, ___ Va. App. ___, ___ S.E.2d ___ (Dec. 8, 2015), we considered the impact of the 2006 amendment to Code § 20-108.1(B)(3) on our prior opinions to the extent those opinions required the trial court to impute income. That amendment provides "that any consideration of imputed income based on a change in a party's employment shall be evaluated with consideration of the good faith and reasonableness of employment decisions made by the party." Code § 20-108.1(B)(3). We stated in Murphy that

> [t]o the extent this Court has previously stated or implied that a
> trial court judge *must* impute income in any circumstance where a
> parent has voluntarily taken a position with a reduced salary,
> without regard for the good faith and reasonableness of the
> decision, or other factors affecting the best interests of the children,
> those holdings are superseded by statutory amendment.

- 7 -

### 3. Calculating the Amount of Imputed Income

Section 20-108.1 provides that "the court *shall* consider all evidence presented relevant to any issues joined in that proceeding . . . [and that] the court's decision in any such proceeding *shall* be rendered upon the evidence relevant to each individual case." (Emphasis added). Thus, when a party raises voluntary unemployment as an issue in the case, Code § 20-108.1(B) requires the court to "consider all evidence presented relevant to" how much income should be imputed to the unemployed party.

Imputed income may be calculated from evidence showing a higher-paying former job voluntarily quit by the parent, from evidence showing that more lucrative work is currently available to the parent, or from evidence showing recent past earnings. Mir v. Mir, 39 Va. App. 119, 128, 571 S.E.2d 299, 304 (2002). The recent past earnings of a voluntarily unemployed parent often provides the most reasonable estimate of earning capacity. See, e.g., O'Hara v. O'Hara, 45 Va. App. 788, 798, 613 S.E.2d 859, 864 (2005) (affirming imputation of income "based on an average of wife's income over the past several years"); Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (reversing the trial court's calculation of imputed income where evidence of recent past earnings did not support the amount); Bishop Cochran, 14 Va. App. at, 831, 419 S.E.2d at 421 (holding that the trial court erred when it did not consider "what the husband could have been reasonably expected to have earned . . . based upon the recent work history and other

---

Murphy, ___ Va. App. at ___, ___ S.E.2d at ___ (footnote omitted). However, here, father makes no argument, nor could he, that his incarceration was an employment decision undertaken in good faith or was otherwise reasonable. Thus, because Murphy expressly limits its holding to cases where there is evidence of good faith and reasonableness, it is not binding precedent in the present case; rather, we are bound by our prior case law requiring consideration of imputed income where a parent has become voluntarily unemployed. See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003) ("The decision of one panel [of our Court] 'becomes a predicate for application of the doctrine of *stare decisis*' and cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court." (quoting Johnson v. Commonwealth, 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996))).

pertinent circumstances); see also Marian F. Dobbs, Determining Child & Spousal Support § 4:37, at 890 (2015) ("Although the court's inquiry is not limited to recent years in determining the potential income of a voluntarily impoverished parent, some courts consider the wage earned prior to voluntary underemployment as the best estimate of earning potential." (footnote omitted)).

The evidence presented must be sufficient to "enable the trial judge reasonably to project what amount could [have been] anticipated" had the parent not become voluntarily unemployed. Albert v. Albert, 38 Va. App. 284, 295, 563 S.E.2d 389, 395 (2002) (quoting Hur v. Va. Dep't of Soc. Servs. Div. of Child Support Enf't ex rel. Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991)). As a result, the imputed amount "must be based on circumstances existing at the time the award is made," Mir, 39 Va. App. at 128, 571 S.E.2d at 304, and "not upon speculation or conjecture," id. (quoting Niemiec, 27 Va. App. at 452, 499 S.E.2d at 579). See id. at 129, 571 S.E.2d at 304 ("[The court] must consider the parent's earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and children." (quoting Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579)). Thus, a parent's wages or other earnings at the time he or she became voluntarily unemployed are not only relevant in determining imputed income, they can be the most probative evidence of current earning capacity.

### 4. Decision to Deviate from the Presumptive Guidelines

While the court is required to assign and consider imputed income when it finds a parent is voluntarily unemployed, that consideration will not necessarily result in a deviation from the presumptive guidelines. Imputation of income is only one of the factors provided in Code § 20-108.1(B) that "affect[s] the obligation [and] the ability of each [parent] to provide child support" and which may justify deviation from the presumptive amount. Therefore, any decision

- 9 -

to deviate from the guidelines by imputing income must be done within a review of the "[statutory] factors . . . , the ability of each party to provide child support, and the best interests of the child." Code § 20-108.1(B). As a general rule, "[w]hat weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion." Robbins v. Robbins, 48 Va. App. 466, 481, 632 S.E.2d 615, 622 (2006) (second alteration in original) (quoting Owens v. Owens, 41 Va. App. 844, 859, 589 S.E.2d 488, 496 (2003)).

> The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of the [Code § 20-108.1] factors. This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. It does mean, however, that the court's findings must have some foundation based on the evidence presented.

Wagner v. Wagner, 4 Va. App. 397, 409-10, 358 S.E.2d 407, 413-14 (1987). "As we have often said: '[T]he trial court *must* consider each of the statutory factors, but *may* determine what weight to assign to each of them.'" Robbins, 48 Va. App. at 481, 632 S.E.2d at 622 (quoting Owens, 41 Va. App. at 859, 589 S.E.2d at 496 (citation omitted)).

"If the court determines from the evidence that imputation of income to a parent is justified, the award is 'calculated by adding . . . a just and appropriate amount [to] the amount reflected in Code § 20-108.2,' accompanied by the requisite written findings." Brooks, 18 Va. App. at 592, 445 S.E.2d at 729 (alteration in original) (quoting Richardson, 12 Va. App. at 19, 401 S.E.2d at 895).

### C. THE TRIAL COURT ERRED IN FAILING TO CONSIDER IMPUTED INCOME

Here, the court determined the presumptive child support amount using zero as father's current income while incarcerated. The court further found that father's incarceration constituted voluntary unemployment. See Layman v. Layman, 25 Va. App. 365, 368, 488 S.E.2d 658, 659

- 10 -

(1997) (holding "that a parent's incarceration may be found to constitute voluntary unemployment under Code § 20-108.1(B)(3)"[3]). These factual findings are not disputed on appeal.

However, after finding father voluntarily unemployed, the court erred in failing to consider evidence presented supporting the imputation of income. Father's recent past earnings provided a reasonable estimate of father's current earning capacity. See Mir, 39 Va. App. at 128, 571 S.E.2d at 304. The court had before it evidence showing that father earned approximately $85,700 in 2013 as a commissioned salesman and earned approximately $54,500 in 2014, the year he was incarcerated. Upon incarceration, father received no commissions, but he continued to earn approximately $3000 per month in wages for the remainder of 2014. Thus, at the time of the April 3, 2015 hearing, the court had before it evidence showing recent past earnings. There is nothing in the record to suggest that father would not have continued to earn the same amount had he not voluntarily decided to commit a criminal act and thus render himself unemployed. The recent past earnings were not based upon speculation or conjecture, see id., but rather reasonably projected what amount father could have been anticipated to earn had he not become voluntarily unemployed, see Albert, 38 Va. App. at 295, 563 S.E.2d at 395. Consequently, the court was required to consider recent past earnings when deciding whether to deviate from the presumptive child support amount.

The trial court reasoned, however, that imputing income would be speculating as to father's post-incarceration income. The court, citing Donnell, 20 Va. App. 37, 455 S.E.2d 256,

---

[3] The rationale behind this principle is that a parent should not be permitted "to shift to his wife and children the consequences of his wrongdoing." Layman, 25 Va. App. at 368, 488 S.E.2d at 659; see also Hammers v. Hammers, 216 Va. 30, 31, 216 S.E.2d 20, 21 (1975) (holding that in order to obtain a reduction in child support payments a parent must show that his lack of ability to pay is not due to his own voluntary act).

concluded that imputing income would require "pick[ing] an amount out of the air, essentially, as to what [father's] income would be" post-incarceration. We disagree.

In the case before us, we are not concerned with what the father might earn upon his release from incarceration. Rather, we are concerned with what the father would have been earning on the date of the hearing but for his voluntary unemployment.[4] "The [mother] was required only to produce evidence that was sufficient to 'enable the trial judge reasonably to project what amount could be anticipated' had the [father] continued in [his] employment." Brody, 16 Va. App. at 651, 432 S.E.2d at 22 (quoting Hur, 13 Va. App. at 60, 409 S.E.2d at 458).

Donnell, on the other hand, concerned an appellant who had retired from his job in anticipation of incarceration. As a result, appellant's $55,000 annual income was replaced with a monthly retirement income of $1987. 20 Va. App. at 41, 455 S.E.2d at 257. Rather than use the most recent past earnings at the time of the award, which was the monthly retirement income, the trial court imputed to the appellant an income equal to his pre-retirement earnings for purposes of equitable distribution, child support, and determination of a monetary award. Id. We reversed, finding that we "[could] not discern from th[e] record the foundation for either

---

[4] We recognize that in L.C.S., 19 Va. App. 709, 453 S.E.2d 580, we observed that it would be speculative to consider past earnings to impute income to an incarcerated attorney because he would be unable to practice law upon his release. Id. at 719, 453 S.E.2d at 585. This statement assumed that the date from which the trial court should impute income was the date of father's release. However, in L.C.S. we specifically declined to reach the issue of whether father's incarceration constituted voluntary unemployment. Rather, we reversed based on the trial court's failure to consider husband's investment income. Hence, the observation regarding past earnings was merely dicta and has no precedential value. See Newman v. Newman, 42 Va. App. 557, 566, 593 S.E.2d 533, 538 (2004) ("*Dicta* cannot 'serve as a source of binding authority in American jurisprudence.'" (quoting United States v. Pasquantino, 336 F.3d 321, 329 (4th Cir. 2003) (*en banc*))). Here, having found father to be voluntarily unemployed, the trial court need only consider father's recent past earnings, and not speculate as to what he might earn upon release.

imputing husband's pre-retirement income or the [monetary] award." Id. at 42, 455 S.E.2d at 258. The trial court in Donnell did not make a finding that the appellant was voluntarily unemployed or that appellant's post-retirement earnings would be equivalent to his pre-retirement earnings. Thus, we found that under the facts of that case, "to impute income in that amount is to premise the awards upon the occurrence of an uncertain future circumstance, prohibited by Jacobs[, 219 Va. at 995, 254 S.E.2d at 58,] and Payne[, 5 Va. App. at 363, 363 S.E.2d at 430]." Id. at 41, 455 S.E.2d at 257.

The trial court here concluded that it was "not sure [it] like[d] that result" but that this Court's holding in Donnell restricted it from imputing income to father because the imputation would amount to speculation. The trial court did not consider Stubblebine v. Stubblebine, 22 Va. App. 703, 473 S.E.2d 72 (1996) (en banc). In Stubblebine, this Court, sitting en banc, affirmed the trial court's finding that the appellant "had twice voluntarily retired after two careers." Id. at 708, 473 S.E.2d at 74. At the time of trial, the Stubblebine appellant was thus voluntarily unemployed, distinguishing the case from Donnell. We held that "[i]mputing income to [appellant] on the basis of his recent past earnings did not constitute an abuse of discretion." Id. at 709, 473 S.E.2d at 74. We further concluded that "based upon the recent record of earnings, the court did not premise the award 'upon the occurrence of an uncertain future circumstance,' Jacobs v. Jacobs, 219 Va. 993, 995-96, 254 S.E.2d 56, 58 (1979)." Id. at 709, 473 S.E.2d at 75.

In this case, like in Stubblebine and unlike in Donnell, the trial court found that father was voluntarily unemployed. Here, like in Stubblebine, father had recent past earnings. Instead of considering what earnings father might earn post-incarceration, the trial court here should have considered what he would have been making but for his misconduct and based imputed income on recent *past* earnings. Such earnings were not speculative because they could be

- 13 -

established with certainty, and an award based on such earnings does not improperly premise the award upon the occurrence of an uncertain future circumstance. Id. Rather, recent past earnings were evidence of what father likely would have earned had he not become voluntarily unemployed. See Albert, 38 Va. App. at 295, 563 S.E.2d at 395. An abuse of discretion occurred "when a relevant factor that should have been given significant weight," the recent past earnings, "[was] not considered [and] when an irrelevant or improper factor," post-incarceration employability, "[was] considered and given significant weight." Landrum, 282 Va. at 352, 717 S.E.2d at 137. We therefore vacate the trial court's child support order and remand for the trial court to consider the evidence presented as to father's recent past earnings as a basis for calculating imputed income.[5]

Although the trial court was required to impute income to father once the court found him to be voluntarily unemployed, this does not mean that the court is required to deviate from the presumptive guidelines. Rather, the decision to deviate from the guidelines must be done within a review of *all* the statutory factors as well as "[s]uch other factors as are necessary to consider the equities for the parents and child." Code § 20-108.1(B)(15).[6] See also Code § 20-108.1(B) ("The court's decision in any such proceeding shall be rendered upon the evidence relevant to

_____

[5] Of course, if the court determined that there was a subsequent material change of circumstance, the court would be free to revisit the issue of child support, including the issues of actual and imputed income.

[6] In considering "[s]uch other factors as are necessary to consider the equities for the parents and children," Code § 20-108(B)(15), the court might conclude that father exiting prison with child support arrearages, or arrearages exceeding a certain amount, would not be in the best interests of the children. Conceivably, the court could determine, "based upon the evidence relevant to each individual case," Code § 20-108(B), that here it would be in the children's best interest to use a nominal amount, or even no amount, of the imputed income in calculating child support. But see L.C.S., 19 Va. App. at 718, 453 S.E.2d at 585 (evaluating the equities where "wife would be required to deplete her entire estate to support herself and her child, and, upon husband's exit from prison, he would walk out of prison with an intact equitable distribution award").

- 14 -

each individual case."). Further, although the trial court must consider each of the statutory factors for which evidence is presented, the weight, if any, to give any particular factor in the overall decision lies within the trial court's sound discretion. Robbins, 48 Va. App. at 481, 632 S.E.2d at 622. Thus, we do not hold that the trial court must deviate from the presumptive guidelines because of the income imputed to father. Rather, we hold that the trial court erred in failing to first consider recent past earnings to calculate the amount of income that should be imputed to father because of his voluntary unemployment. After considering the evidence and the factors, the court may add "'a just and appropriate amount [to] the amount reflected in Code § 20-108.2,' accompanied by the requisite written findings,"[7] Brooks, 18 Va. App. at 592, 445 S.E.2d at 729 (alteration in original) (quoting Richardson, 12 Va. App. at 20, 401 S.E.2d at 895), or the court may conclude that deviation from the presumptive guidelines is not appropriate in this case.

### III. CONCLUSION

Because the court erred by not considering recent past earnings when deciding whether father's voluntary unemployment should result in deviation from the presumptive guidelines, we

---

[7] In order to deviate from the presumptive support amount, Code § 20-108.1(B) requires that

> the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case. The finding that rebuts the guidelines shall state the amount of support that would have been required under the guidelines, [and] shall give a justification of why the order varies from the guidelines . . . .

Significantly, however, the statute contains no requirement for specific findings, written or otherwise, if the court chooses to award the presumptive amount of support.

reverse the court's child support award and remand to the trial court for further consideration consistent with this opinion.

Reversed and remanded.