COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and O'Brien
Argued by videoconference

PUBLISHED

DAVID L. RIDENOUR

v.       Record No.  1889-19-4

LAURA M. RIDENOUR

OPINION BY
JUDGE GLEN A. HUFF
OCTOBER 20, 2020

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Sonya L. Powell (Powell Radomsky, PLLC, on briefs), for
appellant.

Lawrence D. Diehl (Barnes & Diehl, P.C., on brief), for appellee.


David Ridenour ("husband") appeals from the final decree of divorce which awarded

Laura Ridenour ("wife") child support in the monthly sum of $10,336.  Husband contends that

the trial court erred by deviating from the child support guidelines to include expenses for one of

the children's occupational therapist.  Husband contends that such expenses were required to be

treated as unreimbursed medical expenses and, therefore, excluded from the calculation of the

child support award.

This Court disagrees.  The applicable statutes do not mandate that the child's

occupational therapy expenses be treated only as unreimbursed medical expenses and

categorically excluded from consideration when fashioning a child support award.  The statutory

scheme maintains the discretion of trial courts to evaluate the facts of individual cases and

deviate from the child support guidelines in appropriate circumstances.  Because the trial court

did not abuse its discretion in determining that this case presented a unique situation justifying

deviation from the child support guidelines, this Court affirms.

I.  BACKGROUND

"Under familiar principles, we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below.  Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Pommerenke v. Pommerenke, 7 Va. App. 241, 244 (1988) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).  So viewed, the evidence is as follows:

Husband and wife were married on January 1, 2005 and separated on May 31, 2018.  The couple had five children, including B.R. who was born in 2009.  When B.R. was eight months old, he suffered a tragic fall, which resulted in a traumatic brain injury.  As a result, B.R. suffers from a cognitive communication disorder, frontal lobe dysfunction, visual spatial deficits, possible seizure disorder, and attention deficit disorder.  Despite being ten years old at the time of the trial below, B.R. functioned at approximately the level of a four to five-year-old child.

B.R. has worked with Beatrice Bruno, an occupational therapist,[1] since 2011. Bruno began working with B.R. as a member of a treatment team including multiple other therapists who worked with B.R. in different areas such as speech and physical therapy.  However, due to her strong relationship and consistent success working with B.R., Bruno has been B.R.'s sole therapist in recent years.  Bruno now works with B.R. in multiple therapeutic disciplines, including occupational, physical, and speech therapy.  Due to the nature of B.R.'s disabilities and

---

[1] The term "occupational therapy" is more inclusive than the term "occupation" colloquially implies.  As Bruno explained at trial, occupational therapists help their patients to learn or improve doing their daily tasks.  Bruno's role as an occupational therapist includes assisting B.R. with learning to accomplish daily tasks such as brushing his teeth or showering unassisted.

the care he needs, Bruno's therapy also often overlaps with care-giving tasks such as bathing B.R., feeding him, or putting him to bed.

Bruno also spends time working with the couple's other children. This time includes working with them on how to best communicate and interact with B.R. However, on at least one occasion Bruno also accompanied the couple's other children to a psychological evaluation. On that occasion, Bruno acted as their caretaker, speaking with the psychologist, escorting the children to their evaluations, and caring for the children when they became upset during their evaluations.

Although her hours vary, Bruno works with B.R. approximately thirty-five hours per week. However, the entirety of those thirty-five hours is not spent on occupational therapy. Bruno's most recent treatment plan for B.R. calls for ten hours per week of occupational therapy. As Bruno explained, the ten hours per week of occupational therapy represents a goal and assumes that other therapists—such as physical therapists and speech therapists—would take over some aspects of care for B.R. At the time of trial, her thirty-five hours per week represented a mix of occupational therapy and other services, such as physical and speech therapy for B.R. Bruno's services cost approximately $8,000 per month, depending on the specific number of hours spent with B.R.

B.R.'s need for continuing therapy was uncontested at trial. The parties also agreed that Bruno would remain B.R.'s main therapist for the foreseeable future and that her costs should be apportioned 80% to husband and 20% to wife in accordance to their proportional income. An issue arose as to whether Bruno's fee should be considered an unreimbursed medical expense that would not be a part of child support calculations or whether they would present good cause to deviate from the child support guidelines. When asked at the outset by the trial court,

husband's counsel indicated that a deviation *may* be appropriate, but equivocated and said that it would be necessary to speak with husband before giving the court any definite answer.

No further argument on the matter was heard until closing arguments. During husband's closing arguments, he contended that Bruno's expenses should be considered unreimbursed medical expenses as a matter of law, which would result in their exclusion from the child support calculations. The trial court rejected husband's argument, holding that his counsel's statements at the outset of trial bound husband to the position that a deviation was the appropriate mechanism for allocating the cost of Bruno's care.

In granting the final decree of divorce, the trial court determined that Bruno's services were not limited to therapy. The trial court found that "she sometimes served as a caretaker for the other children. She also provided respite time for [mother]." Because of this array of services, the trial court reasoned, B.R.'s needs and Bruno's multi-faceted work justified a deviation from the child support guidelines. The trial court added husband's portion of her $8,000 monthly fee to his child support obligation. This appeal followed.

## II. STANDARD OF REVIEW

"The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Niblett v. Niblett, 65 Va. App. 616, 624 (2015). That discretion, however, is not unbounded. The applicable statutes set forth mandatory steps that courts must follow when exercising their discretion. Id. Therefore, "[u]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal." Id. (quoting Milam v. Milam, 65 Va. App. 439, 451 (2015)).

III. ANALYSIS

Husband contends that the trial court erred in two ways. First, husband avers that the trial court's findings that Bruno acted "as a caretaker for the other children" and "provided respite time" for mother are plainly wrong and without evidence to support them. Second, husband avers that Bruno's care was required, as a matter of law, to be categorized as an unreimbursed medical expense and excluded from child support calculations. Therefore, husband contends that the trial court erred in deviating from the child support guidelines to include the cost of Bruno's care. Wife, for her part, contends that husband's entire argument is precluded by the doctrine prohibiting a party from approbating and reprobating.[2]

Even if this Court were to assume that all of Bruno's work constituted an unreimbursed medical expense, that would not remove the discretion available to the trial court, in the appropriate case, to deviate from the child support guidelines. The applicable statutes do nothing more than set forth a default rule for allocating unreimbursed medical expenses. That default rule is incorporated as a part of the child support guidelines. See Code § 20-108.2(D). The presumption, however, that the guidelines provide "the correct amount of child support to be awarded" may be rebutted upon a finding that such award "would be unjust or inappropriate in a particular case as determined by relevant evidence pertaining to the factors set out in

---

[2] Wife also avers that husband's assignments of error are barred because they challenge a ruling the trial court did not make. Husband's assignments of error challenge the trial court's inclusion of "medical expenses" as a deviation from the child support guidelines as opposed to treating them as unreimbursed medical expenses under Code § 20-108.2(D). Wife argues that this renders husband's assignments of error fatally flawed because the trial court "did not find that the expenses were all medical and therefore never ruled that said expenses should be subject to that section of the Code." Wife contends that this is apparent because the trial court found that Bruno provided an array of different services that extended beyond solely "medical expenses." However, husband specifically challenges the trial court's factual findings on those matters as part of his overall argument. Therefore, this Court finds no merit in wife's attempt to reformulate husband's argument and then seek a procedural dismissal based on that reframing.

§ 20-108.1." Code § 20-108.2(A). The factors to be considered pursuant to Code § 20-108.1 include "[a]ny special needs of a child resulting from any . . . medical condition." Code § 20-108.1(B)(8). Therefore, none of the guidelines' provisions remove a trial court's discretion to deviate from the child support guidelines, including, when warranted, awarding a monetary award for expenses that would be considered unreimbursed medical expenses. In light of the foregoing, wife's preclusion arguments become moot, and this Court finds no error in the trial court's ruling.

Code § 20-108.2 governs how the child support guidelines are calculated. Each of its subsections provide one part of the process. Subsection B sets forth a schedule, based on the number of children and the combined gross monthly income of the parties, that determines the "basic child support obligation." Subsection C defines what is considered as a part of gross monthly income for purposes of subsection B. Subsections E and F define how to calculate costs for insurance and child-care, respectively. Both provide that the resulting costs "shall be added to the basic child support obligation." Pertinent to this appeal, subsection D deals with "unreimbursed medical expenses." It provides that:

> Except for good cause shown or the agreement of the parties, in addition to any other child support obligations established pursuant to this section, any child support order shall provide that the parents pay in proportion to their gross incomes, as used for calculating the monthly support obligation, any reasonable and necessary unreimbursed medical or dental expenses. . . . Any amount paid under this subsection shall not be adjusted by, nor added to, the child support calculated in accordance with subsection G.

Code § 20-108.2(D). Lastly, subsection G provides instructions on calculating the overall child support in different custodial scenarios based on the preceding subsections. In other words, subsection G explains how to combine the "basic child support obligation" gleaned from

subsection B with the other costs calculated in subsections D, E, and F to arrive at the proper child support guideline calculations.

As Code §§ 20-108.1(B) and -108.2(A) clarify, the result of those calculations is only presumptively correct. In cases where a trial court finds that application of those guidelines would be unjust or inappropriate, the trial court may deviate from the presumptive sum in order to set an appropriate child support award tailored to the facts of that case. Contrary to husband's assertions, the discretion given to trial courts to fashion equitable awards in cases where deviations are appropriate is not limited to merely altering the "basic child support obligation" found in Code § 20-108.2(B). Rather, trial courts, when the evidence supports it, have the power to modify the overall child support from that which is established by the guideline calculations, including modifying allocation of any unreimbursed medical expenses or child-care and insurance costs. Therefore, Code § 20-108.2(D) does not require that unreimbursed medical expenses be categorically excluded from child support calculations as a matter of law. It merely sets a default rule that is presumptively correct. In other words, Code § 20-108.2(D) does not limit a trial court's discretion *after* it makes a finding under Code § 20-108.2(A) that application of the guidelines would be unjust or inappropriate. After making such a finding, a trial court has the power to alter any portion of the guideline calculations to arrive at a just and equitable award.[3]

In this case, the trial court found that B.R.'s extensive medical disabilities resulting from his traumatic brain injury justified a deviation from the child support guidelines. Furthermore, it found that B.R.'s extensive disabilities required a wide range of treatment which included more than just occupational therapy for B.R., but also warranted various caretaker functions and

---

[3] Of course, a just and equitable award necessarily implies that parties are prohibited from seeking a double recovery.

respite care for mother as well.  For years, that treatment had been supplied by a single provider due to Bruno's unique success in working with B.R. across the entire spectrum of his impairments.  These facts, the trial court reasoned, rendered an unmodified application of the child support guidelines inappropriate.

Given these facts, this Court holds that the trial court did not abuse its discretion in fashioning the child support award as it did.  B.R.'s medical disabilities present a unique challenge.  Furthermore, the evidence supports the trial court's findings that B.R. and mother require, and Bruno provides, additional caretaker and respite care services.  Both Bruno and mother testified that Bruno often assists B.R. with everything from brushing his teeth to going to bed.  Bruno's high level of involvement in these tasks provides mother with respite time she would not otherwise have to focus on the other children or other aspects of her life.  This is also true for periods of time in which Bruno works with the other children on improving their communication and relationship with B.R.  While these tasks fall under the ambit of therapy in many senses, that does not mean they are not also caretaking and respite care functions.  Indeed, the severity of B.R.'s disabilities and the complexity of his care underscores the uniqueness of this case.  Recognizing the unique challenges to be addressed in providing appropriate child support in the case, the trial court deviated from the child support guidelines in order to fashion an appropriate award which included the cost of B.R.'s unique medical care.  This Court finds no error in the trial court's decision.

IV.  CONCLUSION

The trial court's finding that application of the child support guidelines was unjust and inappropriate in this case is supported by credible evidence.  Therefore, Code § 20-108.2(D) did not require any unreimbursed medical expenses to be categorically excluded from child support

calculations as a matter of law.  Accordingly, the trial court did not abuse its discretion when it fashioned the child support award in this case.

<u>Affirmed.</u>