COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Ortiz and Lorish
Argued by videoconference

LANALEE Z. BUZIAK

                                          MEMORANDUM OPINION[*] BY
v.       Record No. 1361-22-2               JUDGE DANIEL E. ORTIZ
                                               APRIL 2, 2024

JEFFREY J. BUZIAK

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Sarah L. Deneke, Judge

Brandy M. Poss (Barnes & Diehl, P.C., on briefs), for appellant.

Christopher W. Schinstock for appellee.

Lanalee Z. Buziak (mother) appeals the judgment of the circuit court awarding her $24,896.16 in child support arrearages as of July 1, 2022. On appeal, mother argues that the circuit court erred by relying on a demonstrative exhibit introduced by Jeffrey J. Buziak (father) at trial to calculate its award of arrearages and by improperly crediting father for non-conforming child support payments. She further argues that the circuit court erred by failing to award her interest for the child support arrearages contrary to Code § 20-78.2. Because there is sufficient evidence in the record to support the amount of arrearages owed, but the circuit court failed to award interest as required by Code § 20-78.2, we affirm in part, reverse in part, and remand the matter to the circuit court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

"Under familiar principles, we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below"—in this case, father. *Ridenour v. Ridenour*, 72 Va. App. 446, 450 (2020) (alteration in original) (quoting *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244 (1988)).

Father and mother married in 1997, and are the biological parents of a thirteen-year-old child (the child). On April 15, 2013, the circuit court entered a final order of divorce, which incorporated the parties' "Mediated Co-Parenting & Property Settlement Agreement." The parties agreed that they would share joint legal custody of the child and that mother would have primary physical custody. Father agreed to pay $1,000 per month in child support, and the parties agreed that no child support arrearage existed at the time of their divorce.

Following their divorce, the parties attempted to reconcile and lived together in their marital home. In 2014, father moved out of the marital home and into a new home. The parties continued their attempt to reconcile after father moved out, and both mother and the child stayed with father "almost all the time." In March 2015, the parties stopped their efforts to reconcile. Mother continued to spend the night at father's home "five nights a week" until June 2016 when father began dating another woman. Father subsequently moved to Stafford, Virginia, and remarried on July 25, 2018.

On February 17, 2021, father filed motions in the City of Fredericksburg Juvenile and Domestic Relations District Court (the JDR court) seeking to obtain primary physical custody of

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues mother has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

the child and to modify his child support obligation. Mother filed cross-motions to modify father's child support obligation and recover $60,612, plus interest, in child support arrearages. Each party sought attorney fees with their motions.

On October 28, 2021, the JDR court awarded joint legal custody, with primary physical custody to mother, and ordered father to pay $768.48 per month in child support beginning on November 1, 2021. The JDR court also found that father owed $77,333.80 in child support arrearages and ordered father to pay an additional $500 per month until the arrears were satisfied, for a total monthly payment of $1,268.48. Father appealed the JDR court's rulings to the circuit court, and the case proceeded to trial.[2]

At trial, father testified that he had an annual salary of $170,722. He explained that the parties calculated the child support award set forth in the final order of divorce based on the cost of caring for the child at the time of divorce and that the parties agreed to adjust the amount he owed "every January" thereafter. Father further testified that he never missed a child support payment and that he always paid the agreed-upon amount. He also testified that he paid mother in cash "most of the time early on" while they were living together. In support of his testimony, father introduced text message conversations between him and mother about some of his child support payments. According to father, mother never complained about his child support payments until September 7, 2020, two days after he proposed a new visitation schedule for the child.

As to the specific amount of child support arrearages he owed, father testified that he paid mother at least $1,000 per month until July 2014. Thereafter, father testified that he paid mother $450 per month, plus half of all childcare-related costs, and that his base payment increased

---

[2] The circuit court awarded joint legal custody, with primary physical custody to mother. The parties do not contest the circuit court's custody ruling on appeal.

"over time" to $585 per month.[3]  Father further testified that the parties agreed to reduce his child support payments to $438 per month beginning in September 2019 and continuing until the JDR court's October 28, 2021 order.

Father introduced mother's accounting of the child support payments he had made since their divorce, which showed that he had missed numerous child support payments and had only paid his full court-ordered obligation twice.  Then, as a demonstrative exhibit, father presented his own chart reflecting his recollection of additional payments he had made ("demonstrative exhibit"), which the circuit court admitted as a "trial aid" and "not as evidence."  The demonstrative exhibit stated that father owed mother $36,330 in child support arrearages as of March 2021 but did not include any interest owed on the arrearages.  On cross-examination, father conceded that he did not have any canceled checks or receipts showing that he made any child support payment not reflected in mother's accounting.

During her case-in-chief, mother introduced evidence showing that she had an annual salary of $138,868.  Mother also testified that she expected to earn $5,600 in rental income and a bonus of between $2,200 and $3,200 for 2021.  As to child support arrearages, mother introduced her accounting of the child support payments father had made since the time of their divorce, as well as an accounting of the interest owed on the arrearages prepared by the Virginia Department of Social Services ("DSS").  According to the accounting prepared by DSS, father owed $57,686.28 in arrearages plus $19,811.18 in interest for a total of $77,497.46.  With respect to her calculation of the arrearages, mother explained that "if [father] gave [her] money, then [she] gave him a credit."  Mother further testified that father did not pay child support at all for the majority of 2013 to 2016.

---

[3] Notably, mother's accounting of the child support payments shows that father occasionally paid more than $585 per month for child support between July 2014 and September 2019.

While cross-examining mother, father introduced a text message that he sent to her on June 10, 2019, stating that he would subtract $92.12 for costs incurred in connection with a party for the child from the "$585 monthly," to which mother responded that the "[p]arty math looks good." Mother's accounting of child support payments stated that father paid $493, or $92 less than $585, for child support in June 2019. When questioned regarding the discrepancy, mother stated that she did not "know if [father] gave the money to [her] in June or in July and [she] recorded it in a different month."

Father also introduced a similar text message from June 17, 2016, in which mother requested "$575 minus whatever towards trampoline & party," before agreeing to a payment of $450. Mother's accounting of child support payments stated that father paid $450 for child support in June 2016. When questioned regarding the discrepancy between the June 17, 2016 text message and her accounting, mother stated that she did not testify that she "always g[a]ve [father] credit" and that she tried to "give [father] credit for things that [she] . . . knew that [he] paid for." When prompted regarding a third discrepancy between her accounting and a text message from September 15, 2018, mother testified that she was "not sure why the amount [she] recorded is different than whatever [father] said in the text message." At that point, the circuit court observed that "[t]he amount [mother] recorded is what's in these text messages, but it doesn't include credits that [mother gave father]."

At the close of trial, the circuit court directed the parties to submit written briefs on the issues of child support and arrearages. In his written brief, father "recognize[d] that the [c]ourt speaks through its orders, and despite the fact the parties agreed to lower amounts of support commencing in July of 2014 . . . the [c]ourt cannot adopt the lower agreed upon obligation." Father argued, per his testimony and consistent with the demonstrative exhibit, that he owed $36,330 in child support arrearages and that mother's accounting of the arrearages was inaccurate. Mother

argued that father failed to prove that he made "any payments over and above" the payments reflected in her accounting and that, per the DSS calculation, father owed $77,497.46 in child support arrearages.

On July 1, 2022, the circuit court issued a letter opinion finding that father had "always paid support, but not in the amount ordered," and that mother's "records of payments" were inaccurate because they did "not include a number of payments made in cash or kind." It found, however, that father's "continued underpayment of the court ordered amount necessitates the finding of arrearage." The circuit court further found that father owed mother $36,330 in child support arrearages as of February 28, 2021. On August 11, 2022, the circuit court entered a final order stating that, as of July 1, 2022, father owed a child support arrearage of $24,896.16.[4] The circuit court ordered father to pay $374 per month for child support plus an additional $400 per month until the arrears were paid in full.

Mother filed a motion to reconsider, arguing that the circuit court should not have decreased father's child support obligation because he failed to disclose additional sources of income. Mother's motion to reconsider further argued that the circuit court's arrearage calculation was not supported by the evidence and that the circuit court had erred by failing to award interest on the arrears under Code § 20-78.2. Mother's motion to reconsider also noted that "it appears that the court may have given an unspecified credit against the child support arrears for nonconforming payments." On August 17, 2021, the circuit court denied mother's motion to reconsider noting that "[t]he issues of arrears and interest to be assessed on arrears are factual, evidentiary issues that this [c]ourt has no reason or basis to reconsider and that motion is denied." Mother appeals.

---

[4] The circuit court credited father $11,433.84 toward his arrearage based on its retroactive changes to his child support obligation and payments father made in accordance with the JDR court's order.

ANALYSIS

I. Child Support Arrearages

On appeal, mother argues that the circuit court erred in its calculation of child support arrearages. "The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." *Ridenour*, 72 Va. App. at 452 (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). "That discretion, however, is not unbounded. The applicable statutes set forth mandatory steps that the courts must follow when exercising their discretion." *Id.* "Therefore, '[u]nless it appears from the record that the circuit court judge has abused his discretion by not considering or by misapplying one of the statutory mandates, the child support award will not be reversed on appeal.'" *Id.* (alteration in original) (quoting *Milam v. Milam*, 65 Va. App. 439, 451 (2015)).

Mother contends that the circuit court's calculation of child support arrearages is plainly wrong because father did not introduce any evidence at trial to support the calculation. By contrast, she argues that her accounting of father's child support payments, which he introduced during his case-in-chief, demonstrated that he owed $77,305.81 in child support arrearages.[5] Mother further argues that the only other evidence submitted at trial regarding father's payments of child support consisted of his testimony that he paid at least $1,000 per month until July 2014 and the text messages produced at trial, which she contends "does not support an arrearages calculation of anything less than $55,444.24."

Notably, mother recognizes that the demonstrative exhibit identifies the child support payments father made for each month following their divorce and that it stated that father owed

---

[5] On appeal, mother does not dispute that father made all required child support payments after February 28, 2021, and reduced her arrearage calculation accordingly from $77,497.46 to $77,305.81.

- 7 -

$36,330 in child support arrearages, the exact amount awarded by the circuit court before credits. She argues, however, that the circuit court could not consider the demonstrative exhibit because it was not admitted into evidence and father did not testify regarding its contents. We disagree.

"Admission of items of demonstrative evidence to illustrate testimonial evidence is . . . a matter within the sound discretion of a trial court." *Jackson v. Commonwealth*, 267 Va. 178, 203 (2004) (alteration in original) (quoting *Mackall v. Commonwealth*, 236 Va. 240, 254 (1988)) (alteration in original). At the crux of mother's argument is her position that father "did not testify regarding all of the information" on the demonstrative exhibit and that the circuit court improperly relied upon it in the absence of such testimony. Though the trial court explicitly said that it was admitting father's demonstrative aid as a "trial aid" and "not as evidence" during his direct examination, the record is unclear as to whether the trial court later admitted the demonstrative aid into evidence. Regardless, the record demonstrates that father testified with respect to the entirety of the child support payments he made since the parties' divorce, consistent with the payments listed on the demonstrative aid.

At the outset, father testified that he paid at least $1,000 per month for child support until July 2014. Thereafter, father testified that he paid mother $450 per month and that his base payment increased "over time" to $585 per month. Father further testified that he reduced his child support payments to $438 per month beginning in September 2019 until the JDR court's October 28, 2021 order. Although father did not testify specifically with respect to each child support payment he made to mother over the course of the previous eight years, he used the demonstrative exhibit to illustrate how his child support payments increased "over time" as per his testimony. Furthermore, the record shows that mother cross-examined father regarding the contents of the demonstrative exhibit. Under these circumstances, the record shows that father used the

demonstrative exhibit to illustrate his testimony and that the circuit court did not err by considering its contents in calculating its award of child support arrearages.

Mother also contends that the circuit court erred by awarding father credits for non-conforming child support payments. In support of her contention, mother relies on the circuit court's statement that it did not find her "records of payments to be accurate in that they do not include a number of payments made in cash or kind" and argues that the circuit court failed to identify such payments.

In general, "the terms of a support decree must be strictly complied with and payments made when due to the designated payee in accordance with the terms of the decree." *Commonwealth v. Skeens*, 18 Va. App. 154, 158 (1994). A court may only credit a payor spouse for non-conforming payments in "limited situations," based on "an agreement by the parties which modifies the terms or method of payment" and which had "no adverse [e]ffect on the support award." *Gallagher v. Gallagher*, 35 Va. App. 470, 476 (2001) (alteration in original) (quoting *Wilderman v. Wilderman*, 25 Va. App. 500, 506 (1997)).

Here, the circuit court found that the parties voluntarily amended their child support agreement, including the amount owed, but that such amendment without a valid court order was invalid. The court found that mother's accounting was inaccurate, and implicitly credited father's version of events in ordering the amount of arrearages, crediting him for every payment outlined in the demonstrative exhibit. In so doing, it found as fact that he had made such payments, whether in cash or in kind. Based on the record, father's accounting included at least some payments made to third parties for the child's benefit and reflected in the parties' text messages, including payments of $92.12, $125, and $60 for birthday party, music, and picture-related expenses. In calculating arrearages, the circuit court either ignored the text messages presented as evidence, choosing instead to rely only on father's broad testimony that he had made cash payments consistent with

- 9 -

the parties' agreement, or chose to credit father for these non-conforming payments made in kind. The circuit court order noted that mother's accounting did "not include a number of payments made in cash *or kind*," suggesting the latter—that the court's calculations did include non-conforming payments. (Emphasis added). However, mother has consistently conceded that she agreed to credit father for these payments, and reaffirms on appeal that she is only challenging "nonconforming payments that were not alleged by either party." In the absence of evidence or even allegation of specific non-conforming payments to which she has not conceded, we affirm the circuit court's calculation of arrearages. *See Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) ("The burden is upon the appellant to provide [the appellate court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007))).

## II. Interest on Child Support Arrearages

Mother contends that the circuit court erred by failing to award interest on the child support arrearages contrary to Code § 20-78.2. We agree. Code § 20-78.2 states:

> The entry of an order or decree of support for a spouse or for support and maintenance of a child under the provisions of this chapter or §§ 20-107.1 through 20-109 shall constitute a final judgment for any sum or sums in arrears. This order shall also include an amount for interest on the arrearage including from the date support is established or retroactively modified at the judgment interest rate as established by § 6.2-302 unless the obligee, in a writing submitted to the court, waives the collection of interest; and may include reasonable attorney fees if the total arrearage for support and maintenance, excluding interest, is equal to or greater than three months of support and maintenance.

As previously discussed, the record demonstrates that the circuit court based its award of $36,330 in arrearages on father's testimony as illustrated by the demonstrative exhibit. The demonstrative exhibit, however, only addressed the difference between what father owed and what he paid for child support each month; it did not include any calculation of interest. The circuit court

adopted father's calculations, and its order did not award interest on the arrearages. The record also fails to show that mother waived the collection of interest in writing as provided by Code § 20-78.2. As a result, we hold that the circuit court erred by not awarding interest on its award of child support arrearages and by denying mother's motion for reconsideration on that issue. We remand the case to the circuit court to determine and award the amount of interest owed.[6]

### III. Attorney Fees

The parties each request that this Court award them attorney fees and costs that they incurred in this appeal. "This Court has the discretion to grant or deny attorney's fees incurred on appeal." *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021). "In making such a determination, the Court considers all the equities of this case." *Id.*; *see* Rule 5A:30(b)(3). After considering the record before us and the equities of the case, we deny each party's request for appellate attorney fees and costs.

### CONCLUSION

Because the evidence presented was sufficient to support the circuit court's calculation of the amount of child support arrearages owed by father, we affirm its judgment that father owes $36,330, exclusive of interest. As Code § 20-78.2 mandates a calculation of interest unless affirmatively waived by the obligee, we reverse in part and remand the case to the circuit court to calculate the appropriate amount of interest owed.

*Affirmed in part, reversed in part, and remanded.*

---

[6] On appeal, mother also argues in her assignment of error three that the circuit court erred in denying her motion to reconsider, for the same reasons as those alleged related to the circuit court's initial decision in calculating arrearages and interest. Though her motion to reconsider originally addressed other factual issues such as the alleged exclusion of father's rental income from the child support calculation, mother does not raise these issues on appeal. Accordingly, we need not address her motion to reconsider separately from our discussion of the circuit court's original order.