COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Malveaux, Raphael and Frucci

YEMANE MEHARI

MEMORANDUM OPINION*

v.      Record No. 0361-23-4                PER CURIAM
                                            JULY 16, 2024

MUZIT MESFUN-MEHARI

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M.L. Saylor, Judge

(Andrei J. Kublan; Kublan Khan PLC, on brief), for appellant.[1]

(Demian J. McGarry; Curran Moher Weis, P.C., on brief), for appellee.

Appealing a final order of divorce, Yemane Mehari (husband) challenges the circuit court's child-support and equitable-distribution awards. Husband argues that the circuit court erred in calculating child support, in determining that he owed child-support arrearages, and in finding that he owed wife, Muzit Mesfun-Mehari, for unreimbursed costs for their children's healthcare and school tuition. Husband also argues that the circuit court erred by dividing equally the sale proceeds from the former marital residence and by not crediting him for his post-separation-mortgage payments. Finally, he challenges the classification, valuation, and distribution of two Wells Fargo bank accounts and a Fidelity Investment account. Because the circuit court acted well within its discretion in making the challenged findings, we affirm. We

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After filing the opening brief, Andrei J. Kublan moved to withdraw as husband's counsel, which the Court granted. Appellant, *pro se*, filed a reply brief in response to wife's brief.

further find that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Payne v. Payne*, 77 Va. App. 570, 579 n.1 (2023) (quoting *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021)). Here, wife was the prevailing party.

*The marriage*

Husband and wife married on January 12, 2002, and had three children. When the parties divorced in January 2023, their oldest child was an adult and attending college, while their younger children were seven-year-old twins. One of the twins, A.M., had severe autism and was non-verbal. A.M. was in kindergarten at a public school. The other twin, G.M., was also on the autism spectrum but had a "mild version" and was in first grade at a private school. Both A.M. and G.M. participated in therapy and other treatment programs.

During the marriage, each party contributed a set percentage of their income to pay certain monthly household expenses, and they tracked their payments to ensure an equal division. On May 24, 2019, the parties separated but continued living "under the same roof." The parties continued to share the household expenses until May 2020.

Before the marriage, husband owned real estate and bank accounts. After they married, husband executed a deed of gift, transferring to wife and himself the property he owned before the marriage on Old Brentford Court in Alexandria. Husband and wife later sold the Brentford Court property and used the sale proceeds to buy their marital residence, located on Lindberg Drive in Alexandria. In 2008, the parties jointly purchased rental property on South Reynolds

- 2 -

Street in Alexandria, property that husband exclusively managed. Husband also held rental property at Valley Forge Drive in Alexandria, which he owned before the marriage.

During the marriage, the South Reynolds Street and Valley Forge Drive rental income was deposited into the parties' joint account, from which husband paid the expenses. After the parties closed the joint account, husband received the rental income and paid expenses out of his Wells Fargo '6135 checking account.

Both husband and wife worked full-time. Wife earned approximately $12,245 per month and had no other sources of income. Husband earned approximately $12,055 per month and received additional income from the rental properties. Wife calculated husband's total monthly income to be about $13,417. Disagreeing with wife's calculations, husband calculated his monthly income to be $12,959.

The parties employed a nanny to help them with the children, but the nanny left in 2022 after five-and-a-half years with the family. The parties then jointly interviewed and hired a new nanny, who charged $25 per hour. The parties advised the new nanny that she would be working between 30 and 40 hours per week, Monday through Friday. Husband told the new nanny that he thought she would be "a great fit" for their family. The new nanny started in September 2022.

*Wife files for divorce*

On August 5, 2021, wife filed a complaint for divorce and requested, among other things, equitable distribution and child support, retroactive to the filing of the complaint.[2] The circuit court entered a pendente lite order that awarded each party $15,000 from husband's Wells Fargo '4195 savings account to be used for counsel fees. The order also directed the parties to divide

---

[2] The parties resolved custody and visitation during the divorce proceedings; they agreed to joint legal custody with wife having primary physical custody of the children. They also agreed to a parenting schedule, with husband having visitation every other weekend, every Wednesday evening, and every other Monday evening.

equally the children's "reasonable and necessary" unreimbursed medical expenses and one child's private-school-tuition payments. Wife requested that husband pay half of the children's medical and educational expenses as of the filing of the complaint for divorce. But husband opposed wife's request because he had paid for the children's health insurance, some of their medical expenses, and other household expenses. The circuit court reserved the issue of reimbursement for past medical expenses and tuition.

*Equitable distribution*

The parties agreed on the value and mortgage balance of the Lindberg Drive property. Husband testified that since October 2020, he had paid the mortgage on the former marital residence without any financial assistance from wife.[3] Husband sought a credit for the mortgage payments he had paid since October 2020, and he also sought the option of buying out wife's interest in the property. Wife wanted to sell the house and divide the proceeds.

Before the equitable-distribution hearing, wife moved for an alternate valuation date of husband's two Wells Fargo accounts and his Fidelity Investment account. During the separation, husband had withdrawn and transferred alleged marital funds from those accounts.

According to wife, husband opened his Wells Fargo '6135 account during the marriage. She requested that the balance be divided as of February 1, 2022. As of August 31, 2022, the balance was only $10,399.80, but it was $36,809.25 as of January 31, 2022. Wife had no control over or access to that account. Husband, however, testified that the account was premarital and had changed with bank acquisitions. Husband explained that the banks no longer maintained the old records, but wife disputed his claims and argued that he had no proof that the account had changed with bank acquisitions.

---

[3] Wife paid other household expenses, including the utilities and the children's expenses.

Wife also testified that husband's Wells Fargo '4195 account was opened during the marriage and requested that it be divided equally as of January 1, 2022, less the $30,000 from the pendente lite order. As of January 1, 2022, the balance was $48,510.55, but on August 31, 2022, the balance was $2,434.07. Husband argued that the account was a premarital account and his separate property, yet he provided no documents from 2002 through 2017 to support this claim. Although the bank names had changed over the years, husband asserted that it was the same account that he had owned before the marriage, which had a balance of $84,477 as of January 2002. Husband testified that since the separation, he had deposited his paychecks into his Wells Fargo accounts and moved money between them and his Fidelity Investment account.

Husband owned the Fidelity Investment account before the marriage. Wife calculated the marital and separate shares of the account and requested half of the marital share. Husband asked the circuit court to credit him with his premarital and post-separation contributions.

*Circuit court opinion*

The circuit court issued a letter opinion resolving the equitable-distribution and child-support issues. After considering the factors under Code § 20-107.3(E), the circuit court classified the properties at Lindberg Drive and South Reynolds Street as marital and the property at Valley Forge Drive as hybrid. The circuit court ordered that the Lindberg Drive property be listed for sale, with the net-sale proceeds divided equally. Husband retained the Valley Forge Drive property but had to pay wife for her share from his portion of the Lindberg Drive proceeds. Husband had the option to keep the South Reynolds Street property and pay wife for her share, or they could sell the property and divide the proceeds equally.

The circuit court found that husband's Wells Fargo accounts were marital property and granted wife's motion for an alternate valuation date. Finding that husband "improperly dissipated" funds from the Wells Fargo accounts, the circuit court valued the Wells Fargo '6135 account at

$36,809 and the '4195 account at $18,511. After considering the value of another marital bank account that was awarded to wife, the circuit court ordered husband to pay wife $15,742 for her marital share of the Wells Fargo accounts.

Wife had moved for an alternate valuation date for husband's Fidelity Investment account. After finding that there was "significant comingling" of the funds in the account, the circuit court found that the account was hybrid and calculated the marital share and husband's share. The circuit court ordered husband to pay wife half of the marital share.

The circuit court considered the custody order and parenting arrangements. The court applied the child-support guidelines and adopted wife's calculation of husband's monthly income. Because of A.M.'s needs, the circuit court found that $3,500 per month for work-related childcare costs was "reasonable and necessary." After including the cost of the children's health insurance, the circuit court calculated husband's monthly child-support obligation to be $2,990, effective December 1, 2022. The circuit court also awarded retroactive child support in the amount of $1,160 per month to the date of the filing of the complaint and ordered husband to pay a lump sum of arrears totaling $18,373. Finally, the circuit court ordered husband to reimburse wife $13,654 for the children's out-of-pocket healthcare expenses and $6,364 for G.M.'s tuition.

On January 30, 2023, the circuit court entered a final order of divorce, incorporating its letter opinion. Husband appeals.[4]

ANALYSIS

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "In challenging the court's decision on appeal, the party seeking reversal bears the

_____

[4] Husband originally noted 13 assignments of error. In his opening brief he abandoned 5 of those but retained his original numbering, leaving assignments 1-4, 6, and 10-12.

burden to demonstrate error on the part of the trial court." *Id.* at 272-73 (quoting *Barker v. Barker*, 27 Va. App. 519, 535 (1998)).

## I. Child support (Assignment of Error 1)

"The determination of child support is a matter of discretion for the circuit court," so we will not reverse the judgment unless it is "plainly wrong or unsupported by the evidence." *Da'mes v. Da'mes*, 74 Va. App. 138, 144 (2022) (quoting *Niblett v. Niblett*, 65 Va. App. 616, 624 (2015)). "Child support decisions . . . 'typically involve fact-specific decisions best left in the "sound discretion" of the trial court.'" *Id.* (alteration in original) (quoting *Niblett*, 65 Va. App. at 624). "That discretion, however, is not unbounded. The applicable statutes set forth mandatory steps that courts must follow when exercising their discretion." *Ridenour v. Ridenour*, 72 Va. App. 446, 452 (2020). Thus, this Court will not reverse absent a showing that a circuit court has abused its discretion "by not considering or by misapplying one of the statutory mandates." *Id.* (quoting *Niblett*, 65 Va. App. at 624).

Husband argues that the circuit court erred when it found that $3,500 per month was a "reasonable and necessary" work-related childcare expense. Husband maintains that "right before the final court hearing," wife "unilaterally retained a nanny," paying her $3,500 per month and "claiming the entire amount as work-related childcare." He questioned the necessity because the nanny and wife work together in the morning to get the children ready for school, and the children are at school during the day while wife works from home. Husband emphasizes that he has custody of the children 129 days of the year and he takes G.M. to school and A.M. to therapy. Husband contends that "a large portion" of the nanny expenses were inappropriate because he was willing and able to help with childcare.

"Any child-care costs incurred on behalf of the child or children due to employment of the custodial parent shall be added to the basic child support obligation." Code § 20-108.2(F).

"Where appropriate, the court shall consider the willingness and availability of the noncustodial parent to provide child care personally in determining whether child-care costs are necessary or excessive." *Id.*

In considering the reasonableness of the childcare costs, the circuit court noted A.M.'s special needs. Wife had testified about the extra care A.M. required because he could not be left alone and could not feed himself. Wife required the nanny's assistance with morning tasks, such as preparing the children's breakfasts and lunches, waking them up, getting them dressed, and taking A.M. to school. While wife worked in the afternoon, the nanny helped with transportation, homework, activities, and dinner.

Wife also testified that without the nanny, she could not attend to all the children's needs and also meet her job expectations. Husband similarly required assistance from the nanny in the morning and afternoon when wife would be out of town for work. The parties had a different nanny for five-and-a-half years until she left in September 2022. Then, contrary to husband's assertions, both husband and wife interviewed and hired the new nanny, who started a few days after the previous nanny left. Considering the parties' circumstances and their joint decision to hire the new nanny, the circuit court was not plainly wrong in finding that $3,500 was a "reasonable and necessary" work-related childcare expense.

## II. Rental income (Assignment of Error 2)

Husband contends that the circuit court erred by including rental income as part of his income for child-support purposes. He argues that his net income from the rental properties was "a lot lower" than the amount used for the child-support calculations.

"The issue of a party's income is a question of fact that we will not disturb unless it is plainly wrong or without evidence to support it." *Da'mes*, 74 Va. App. at 145 (quoting *Milam v. Milam*, 65 Va. App. 439, 462 (2015)). Under Code § 20-108.2(C), a party's gross income

includes "all income from all sources," including "rental income." "Gross rental income from any property owned individually, jointly, or by any entity shall be subject to deduction of reasonable expenses; however, the deduction shall not include the cost of acquisition, depreciation, or the principal portion of any mortgage payment." Code § 20-108.2(C).

The parties agreed on the annual amount of rent that husband received, and substantially agreed on the expenses for insurance, repairs, taxes, and condominium fees. But husband also included a special-assessment fee for the Valley Forge Drive property. Husband testified that the special assessment occurred only in 2022, not in any other year. He explained that at the time of the November 2022 hearing, the board had not decided whether there would be an assessment in 2023, but the owners had opposed it.

The circuit court adopted wife's calculation of husband's income, which did not include the special assessment. The party claiming a deduction for "reasonable expenses for rental property shall have the burden of proof to establish such expenses by a preponderance of the evidence." *Id.* Husband provided no supporting documentation about the special assessment, and nothing suggested that it would continue in 2023. Thus, the trial court properly excluded the special assessment from its calculation of husband's rental income.

### III. Retroactive child support and arrears (Assignment of Error 3)

The circuit court awarded child support retroactively to the date of filing the complaint. Husband argues that the circuit court erred when it determined that he owed wife $18,373 for child-support arrears because it failed to consider that they had lived under the same roof during their separation and had shared expenses.

The award of child-support payments is governed by Code § 20-108.1. "Liability for support shall be determined retroactively" from the filing of the complaint. Code § 20-108.1(B).

We have held that there is "no latitude under the statute" because it mandates that courts order child-support awards to be retroactive. *Cirrito v. Cirrito*, 44 Va. App. 287, 310 (2004).

The circuit court heard evidence of husband's contributions to the household and held that husband's child-support obligation was $1,160 per month from the date of the filing of the complaint to November 30, 2022, and $2,990 per month as of December 1, 2022. Considering the statutory mandate, the circuit court did not err in ordering that husband's child-support obligation be retroactive to the date of the filing of the complaint.

### IV. *Reimbursement for the children's expenses (Assignment of Error 4)*

Husband next argues that the circuit court erred by ordering him to pay wife $13,654 for the children's unreimbursed medical costs and $6,364 for G.M.'s tuition. He also asserts that the circuit court "completely ignore[ed]" his financial contributions to the household expenses during the separation.

The pendente lite order required husband to pay half of the children's "[r]easonable and necessary unreimbursed medical expenses" and half of G.M.'s tuition. The circuit court reserved "for later determination" the issue of reimbursement for past payments. Wife testified that she had paid for medical and tuition expenses following the parties' separation and sought reimbursement from husband. At trial, husband acknowledged his agreement that G.M. attend private school; husband did not have "any problem contributing half the cost of that school." He also agreed that the children's medical expenses were "reasonable and necessary."

Code § 20-108.2(D) establishes the default method by which a minor child's uncovered medical expenses are to be allocated between the parties. Absent "good cause shown or the agreement of the parties," "the parents pay in proportion to their gross incomes." Code § 20-108.2(D). But Code § 20-108.1 allows for deviation from the child-support guidelines and lists several factors for a court to consider, such as "[d]irect payments ordered by the court for

- 10 -

. . . education expenses" and "[a]ny special needs of a child resulting from any physical, emotional, or medical condition." Code § 20-108.1(B)(6), (8).

After hearing all the evidence and argument, the circuit court found that "[p]ursuant to the agreement of the [p]arties as articulated" at the final hearing, husband would reimburse wife "$6,364 for 50% of the costs" of G.M.'s school. The circuit court also found that wife had "incurred reasonable and necessary out-of-pocket healthcare expenses for the children" and was "entitled to reimbursement" from husband for half of the expenses. What is more, husband and wife both testified that they continued to share expenses during the separation. Husband's voluntary contributions during that period do not negate his obligation under Code § 20-108.1 to reimburse wife for tuition and healthcare expenses that he agreed were reasonable and necessary.

### V. Equitable distribution (Assignments of Error 6, 10-12)

This Court will not overturn an equitable-distribution award unless we find "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)). "Because making an equitable distribution award is often a difficult task, 'we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" *Sobol*, 74 Va. App. at 272 (quoting *Howell v. Howell*, 31 Va. App. 332, 350 (2000)). "[T]o the extent that the appeal requires an examination of the proper interpretation and application of Code § 20-107.3, it involves issues of law, which the Court reviews *de novo* on appeal." *Dixon*, 71 Va. App. at 718.

#### Lindberg Drive property

Husband argues that the circuit court erred by dividing equally the sale proceeds from the Lindberg Drive property and not crediting him for the mortgage payments that he made during

the parties' separation. He asserts that the circuit court "erroneously equat[ed] these payments with various unverified post-separation payments paid by [wife], which were significantly less" than his contributions.

A circuit court has the discretion "to make an equal division or to make a substantially disparate division of assets as the factors outlined in Code § 20-107.3(E) require." *Payne*, 77 Va. App. at 596 (quoting *Rinaldi v. Rinaldi*, 53 Va. App. 61, 76 (2008)). "The statute does not prescribe a set formula that trial courts must apply when dividing assets and liabilities." *Id.* at 597. "Code § 20-107.3 does not mandate that the trial court award a corresponding dollar-for-dollar credit" for post-separation mortgage payments. *Id.* (quoting *von Raab v. von Raab*, 26 Va. App. 239, 250 (1997)).

Here, the circuit court considered the factors in Code § 20-107.3(E), including husband's post-separation mortgage payments and wife's post-separation contributions to the household. After weighing the statutory factors and the parties' contributions, the circuit court did not abuse its discretion by dividing equally the sale proceeds of the Lindberg Drive property.

*Classification of the Wells Fargo accounts*

Husband asserts that the circuit court erred by finding that the Wells Fargo accounts were transmuted into marital assets. Husband argues that he provided sufficient evidence to prove that his Wells Fargo '4195 account was a successor of a premarital account and his separate property. He also claims that he provided evidence that he had deposited his paychecks earned during the parties' separation into the Wells Fargo '6135 account, so he had separate property in the account that the circuit court should have given him a "proper credit" for.

"A circuit court's classification of property or debt is a finding of fact that 'will not be reversed on appeal unless it is plainly wrong or without evidence to support it.'" *Price v. Peek*, 72 Va. App. 640, 647 (2020) (quoting *Ranney v. Ranney*, 45 Va. App. 17, 31-32 (2005)). Code

- 12 -

§ 20-107.3(A) defines separate property, marital property, and hybrid property that is part marital and part separate. The presumption is that "[a]ll property . . . acquired by either spouse during the marriage . . . is presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). Separate property includes property that was "acquired by either party before the marriage." Code § 20-107.3(A)(1)(i).

Husband claimed at trial that the Wells Fargo '4195 account was opened before the marriage. He explained that the account had changed names with bank mergers. He offered into evidence a bank statement from December 2001, claiming that it was the precursor to the account. But the account numbers were different. The circuit court also received into evidence account statements from August 2021 through October 2022. But husband provided no documents from 2002 to 2017 to support his claim that the account was premarital. Noting that the account was titled in husband's name only, the circuit court found that the "statements received into evidence [did] not contain any information as to the opening date for these accounts." Husband failed to meet his burden to establish that the Wells Fargo '4195 account was his separate property. Thus, the circuit court did not err in classifying it as marital property.

Wife testified that husband opened the Wells Fargo '6135 account during the marriage, while husband claimed he opened it before the marriage. As with the other Wells Fargo account, husband explained that the name of the account had changed with bank acquisitions and the banks no longer maintained the old records. Husband submitted account statements from August 2021 through October 2022. Husband testified that although he deposited his paychecks since the separation into the account, he "juggle[d]" money between the two Wells Fargo accounts depending on his needs and the balances of the accounts. He also deposited rental income into the account, from which he paid expenses for the rental property.

On appeal, husband claims that because he had deposited his paychecks into the account during the parties' separation, "the trial court was required to specifically look at the source of all funds in Wells Fargo ['6135] account . . . to determine which funds were marital and which funds were separate property." But it was husband's burden to trace his separate property. "When a spouse commingles separate and marital funds in a single account created during the marriage, the spouse claiming a separate share must shoulder the burden of tracing. If he cannot do so, the account remains wholly marital." *Robbins v. Robbins*, 48 Va. App. 466, 478 (2006). "Even if a party can prove that some part of an asset is separate, if the court cannot determine the separate amount, the 'unknown amount contributed from the separate source transmutes by commingling and becomes marital property.'" *Rahbaran v. Rahbaran*, 26 Va. App. 195, 208-09 (1997) (quoting Brett R. Turner, *Equitable Distribution of Property* 268 (1994)).

During closing arguments, husband recognized that it was "complicated to establish . . . separate contributions versus marital contributions over a lengthy marriage." Even though the Wells Fargo accounts were titled in husband's name only, the circuit court found that "marital funds were deposited into these accounts and the accounts were used for marital purposes." In short, husband failed to carry his burden to prove his separate share of the Wells Fargo '6135 account. So the circuit court did not err in classifying it as marital property.

*Alternate valuation date*

Husband also challenges the circuit court's application of an alternate valuation date for the Wells Fargo accounts. He contends that the circuit court erred in finding that he "improperly dissipated funds" from these accounts.

Code § 20-107.3(A) establishes a presumption that the date of the evidentiary hearing should be used as the date of valuation of the parties' property. But "[u]pon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause

- 14 -

shown, in order to attain the ends of justice, order that a different valuation date be used." *Id.* "On appeal, we review the court's determination of a valuation date for abuse of discretion." *Wright v. Wright*, 61 Va. App. 432, 463 (2013) (quoting *Thomas v. Thomas*, 40 Va. App. 639, 647 (2003)); *see also Sobol*, 74 Va. App. at 279 (same).

Using an alternate valuation date may be necessary if a spouse wastes marital assets after separation, because when "assets [are] wasted in anticipation of separation or divorce, equity can only be accomplished if the party who last had the funds is held accountable for them." *Clements v. Clements*, 10 Va. App. 580, 586 (1990). "Dissipation occurs where one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." *Wright*, 61 Va. App. at 464 (quoting *Clements*, 10 Va. App. at 586). "Once the aggrieved spouse shows that marital funds were either withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." *Id.* (quoting *Clements*, 10 Va. App. at 586). Thus, husband had "both the burden of production and the burden of persuasion." *Sobol*, 74 Va. App. at 281.

Here, the circuit court found that the Wells Fargo accounts were marital property and that husband had "improperly dissipated funds" from those accounts. Wife showed that the balance of the Wells Fargo '6135 account had decreased from $36,809.25 as of January 2022 to $10,399.80 as of August 2022. Wife also showed that the balance of the Wells Fargo '4195 account had decreased from $48,510.55 as of January 2022 to $2,434.07 as of August 2022. Even after the pendente lite order, the account would have had a balance of $18,510.55.

The bank statements from the Wells Fargo '4195 account showed the withdrawals of $15,000 in January 2022 and $24,000 in February 2022. Husband claimed that he transferred funds to other accounts and withdrew funds to use for various expenses, such as his oldest

daughter's college tuition, his orthodontic bills, car maintenance, home insurance, and groceries. Husband, however, offered no supporting documentation for his claims. The circuit court "was required to consider and weigh husband's evidence in light of all of the evidence." *Sobol*, 74 Va. App. at 281.

Here, the circuit court found that husband did not meet his burden. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Id.* at 272 (quoting *Anderson v. Anderson*, 29 Va. App. 673, 686 (1999)). "Given our deference to the factfinder," we cannot say that the circuit court erred in finding that husband failed to meet his burden of proving that there was no dissipation of assets. *Id.* at 282. So the court did not abuse its discretion in granting wife's motion for an alternate valuation date.

*Classification of the Fidelity Investment account*

Husband next argues that the circuit court erred in classifying the Fidelity Investment account as hybrid property. He asserts that the account was opened before the marriage and remained his separate property. He claims that there was no evidence that the account "substantially appreciated during the marriage," nor that he "expended significant personal efforts managing those investments." Although he concedes that he deposited funds into the account during the marriage, he alleges that the funds were from his separate accounts.

The circuit court received into evidence one statement from September 2000, an annual statement from 2002, and monthly statements from January 2019 through August 2022 for the Fidelity Investment account. Wife acknowledged that the account existed before the marriage, but she argued that it was hybrid property because husband had deposited marital funds into the account. The circuit court agreed with wife and found that the account was part marital and part separate property.

When separate property increases in value during the marriage, "such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property." Code § 20-107.3(A)(3)(a). Husband argues that there was no "substantial appreciation" of the Fidelity Investment account because the value in January 2002 was $90,861.73, and the value in August 2022 was $92,542.34. But husband has cherry-picked his dates. In fact, the account balance fluctuated throughout the marriage. For example, it reached $226,746.21 on January 31, 2021.

Code § 20-107.3(A)(3)(a) makes clear that "the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value." Here, wife proved that marital funds were deposited into the account, causing it to increase in value. "Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort." *Id.* Husband concedes that there was "no evidence" that he used any "significant personal efforts" to manage the investments. He contends that he deposited separate funds into the account, but as noted above, the Wells Fargo accounts were marital property and deposits from those accounts were "contributions of marital property." *Id.* Thus, the circuit court did not err in classifying the Fidelity Investment account as hybrid property.

### IV. Attorney Fees

Both parties requested an award of attorney fees and costs incurred on appeal. "'In domestic relations cases,' the Court will award 'appellate attorney[] fees when the arguments on appeal are "not fairly debatable under any reasonable construction of the record or the governing legal principles.""" *Yazdani v. Sazegar*, 76 Va. App. 261, 277 (2022) (alteration in original)

(quoting *Friedman v. Smith*, 68 Va. App. 529, 546 (2018)); *see also* Code § 20-99(6); Rule 5A:30(b)(2). After considering the equities of the case and having found that the appeal is wholly without merit, we find that wife is entitled to an award of reasonable attorney fees incurred for this appeal. We remand the case to the circuit court to determine the appropriate amount. *See* Rule 5A:30(b).

CONCLUSION

After considering each of husband's eight challenges to the circuit court's child-support and equitable-distribution rulings, we find no reversible error and no basis to disturb the judgment. We remand the case for the circuit court to determine and award wife her reasonable appellate attorney fees.

*Affirmed and remanded.*